## James McIntyre

*v.*

## The People of the State of Illinois.

1. Criminal law—*jury must be in charge of a sworn officer*. The statute is peremptory, that upon the trial of a party charged with crime, when the jury retire to consider of their verdict, they must be placed in charge of a sworn officer. If this requirement should be omitted without the consent of the accused, it will be ground for reversal of judgment of conviction.

2. Same—*of the exception in cases of misdemeanors*. There is no exception to this rule except in cases of misdemeanors, where the parties, by agreement, may dispense with the requirement; but even in such cases, the agreement must not only be made, but the court is required to enter it upon its minutes.

3. Same—*what the record should show in that regard*. However, it is not necessary, even in capital cases, that the record should show that the officer placed in charge of the jury, was sworn as the statute requires; it is the duty of the court to send a sworn officer with the jury, and if this duty should be neglected, that fact, to become availing to the party convicted, must appear from a bill of exceptions.

4. SAME—*of remarks of the court calculated to hasten the action of the jury.* As a jury who were trying a party on the charge of murder, were about to retire to consider of their verdict, it being in the night time, the court remarked to them, orally; "it is now about 9 o'clock, and the court will continue in session a half hour to see if there should be then a possibility of agreement. If there should be no possibility of agreement the court will adjourn until morning." It was considered that these remarks could not have injuriously hastened the action of the jury, as they did not, in fact, agree until some hours afterwards.

5. Nor was it considered that with men qualified to act as jurors, and having in charge the life of a fellow being, such considerations would induce hasty action on the part of the jury, injurious to the prisoner, and, therefore, an expression of the character indicated, would not be erroneous.

6. SAME—*drunkenness—its influence upon a criminal act.* Drunkenness is certainly no excuse for crime, but it can not, in law, be held to aggravate crime. It can not aggravate an offense which, in law, is only manslaughter, if committed by a sober man, into murder, if done by a drunken man. Nor will it increase a minor offense to one of a higher grade.

7. A drunken man may, no doubt, commit manslaughter; but to constitute the crime of that grade, when committed by a drunken man, there must be the same degree of provocation requisite to constitute that grade of offense if committed by a sober man.

8. So it is not essential, in order to reduce the offense from murder to manslaughter, when committed by a drunken man, that he should be intoxicated at the time of the killing to such a degree as to be unconscious of his acts or incapable of forming a deliberate purpose of taking life.

9. SAME—*at what time a verdict may be received.* It is not error for the judge to receive the verdict of a jury even in a capital case, in the interval between an adjournment of the court and its meeting again in pursuance of such adjournment. The receiving of the verdict is a mere ministerial act.

10. MOTION IN ARREST OF JUDGMENT—*manner of disposing of the same.* It is not necessary that a motion in arrest of judgment should be formally disposed of before entering final judgment. The entering of the judgment is, in effect, an overruling of a motion in arrest or for a new trial.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

This was an indictment found by the grand jury in Fayette county, against James McIntyre, for the alleged murder of

Ewing Stalle, at Vandalia, in Fayette county, on the 26th day of March, 1864.

The cause was removed into the Circuit Court of Marion county upon change of venue, where a trial was had. The homicide was proven, and it appeared the prisoner was under the influence of liquor at the time of the killing. At the close of the evidence the court adjourned for one hour, the jury being placed in charge of an officer who was sworn to keep them together under the order of the court.

On the meeting of court again, and after the argument of counsel, the following instruction was given to the jury, at the instance of the prosecution :

Drunkenness is no excuse for crime, but rather an aggravation of it. And before the jury can determine what the offense charged in the indictment meant, if they believe the same proved as charged, ought to be from murder to manslaughter, owing to the intoxication of the defendant at the time of such killing, they must believe that the defendant was intoxicated to such a degree as not to be conscious of his acts, or unable to form in his mind a deliberate intention to take the life of the deceased, provided they believe the life of the defendant was taken as charged.

To the giving of which exception was taken.

The trial had extended into the night time, and when the jury were about to retire to consider of their verdict, the court remarked to them, orally :

"It is now about 9 o'clock, and the court will continue in session a half hour to see if there should be then a possibility of agreement. If there should be no possibility of agreement the court will adjourn till morning." When, after waiting about an hour, the court adjourned until the next morning.

The jury were placed in charge of the same officer who had them in charge at the preceding adjournment, no other oath being administered to him than the one taken at that time, to keep the jury together under the order of the court ; the court, however, requesting the officer, orally, to keep the jury

together, and when they had agreed on a verdict return them into court.

After the adjournment of court to 8½ o'clock the next morning, and before that hour, to-wit: at about half past 12 o'clock, the jury having informed the judge they had agreed, the judge met the jury in the court room, and then and there directed the sheriff to open court, which the sheriff then did, and in presence of prisoner but not of his counsel, the verdict was handed to the clerk and read.

The verdict found the prisoner guilty. His attorney was called, the verdict again read and the jury polled. A motion was then entered for a new trial and in arrest of judgment. This motion was not formally disposed of, but the court entered final judgment upon the verdict, pronouncing sentence of death upon the prisoner.

He thereupon sued out this writ of error, and now insists the court erred,

1st. Because in oral remarks to the jury by the judge at the time of their retirement, to the effect, that he would adjourn over until the next morning if they did not agree upon the verdict by a certain time.

2d. The court erred in giving the instruction to the jury.

3d. Because the court erred in permitting the jury to retire to consider of their verdict without being placed in charge of an officer sworn for that purpose *expressly*.

4th. The court erred in receiving and entering the verdict of the jury of record pending and during the adjournment.

5th. The court erred in passing sentence before disposing of the motion pending in arrest of judgment.

6th. The court erred in the judgment of the court as rendered in the sentence of death.

Mr. H. K. S. O'MELVENY, for the plaintiff in error.

Mr. THOMAS S. CASEY, State's attorney, for the people.

Mr. Chief Justice Walker delivered the opinion of the Court:

We only propose in this case to determine whether the court below should have granted a new trial, not on the evidence, but alleged irregularities in the trial. The first question presented by the assignment of errors, is, that the court below should have placed the jury in charge of a sworn officer of the court when they retired to deliberate upon their verdict. The 189th section of chapter entitled, "Criminal Jurisprudence" (R. S. 186) declares, that "when the jury shall retire to consider of their verdict, in any criminal case, a constable or other officer, shall be sworn or affirmed to attend the jury to some private and convenient place, and to the best of his ability, keep them together, without meat or drink, water excepted, unless by leave of the court, until they shall have agreed upon their verdict; nor suffer others to speak to them, and that when they shall have agreed on their verdict, he will return them into court." A subsequent clause, in the same section, provides that in cases of misdemeanors, the prosecutor for the people and the person on trial by himself or counsel, may agree, which agreement shall be entered on the minutes of the court, that the jury may reduce their verdict to writing and disperse upon delivering it, sealed up, to the clerk, and they may also agree to dispense with the attendance of a sworn officer; and declares that the court may carry such agreement into effect and receive the verdict thus found.

The language of this section is explicit and peremptory, in the requirement that the jury when they retire to consider of their verdict, shall be placed in charge of a sworn officer. Nor is there any exception, only in cases of misdemeanors, where the parties, by agreement, may dispense with the requirement, and even in that case the agreement must not only be made, but the court is required to enter it upon its minutes. In the case of *Kinney* v. *The People*, 2 Gilm. 540, this court said, that in capital cases the law indisputably is, that from the

commencement of the trial until the rendition of the verdict, the jury during all adjournments of the court, should be placed in charge of an officer, unless it is otherwise ordered by the court on the consent of the accused and the attorney for the people.

The court in that case, also, say that it is not necessary that the record should show, that an officer was sworn to take charge of the jury, but that it is the duty of the court to send a sworn officer with the jury, and if this duty is neglected, such fact should appear from a bill of exceptions. In this case it appears from the evidence embodied in the bill of exceptions, that the officer having charge of the jury, at the time they retired to consider of their verdict, was not sworn. It, however, appears that on an adjournment of the court at a previous time in the progress of the trial, the officer was sworn and charged by the court, but the oath required by the statute was not administered. The Legislature has deemed this precaution essential to secure a fair and impartial trial; and it is a right secured to the accused, of which he can not be deprived by the court or officers of the law. And if the requirement is omitted without his consent, he may urge it for a reversal of a judgment of conviction.

It is again urged, that the remarks of the judge who tried the case, to the jury as they retired, that he would hold court open for a specified time to see if they would be able to agree, and if they should not that he would adjourn until the next morning, was calculated to prejudice the prisoner by leading to hasty action on the part of the jury. We are not able to perceive that the remarks had any injurious effects, as they did not agree for several hours after the time indicated by the judge. It could, therefore, have had no tendency to injuriously hasten the deliberations of the jury and was consequently not erroneous. Nor do we perceive, that with men qualified to act as jurors, having in charge the life of a fellow being, that such a consideration could have produced such a result.

It is likewise insisted that the court erred in giving the people's seventh instruction. It is this: "Drunkenness is no excuse for crime, but rather an aggravation of it. And before the jury can determine what the offense charged in the indictment meant, if they believe the same proved as charged, and that it ought to be reduced from murder to manslaughter, owing to the intoxication of the defendant at the time of such killing, they must believe that the defendant was intoxicated to such a degree as not to be conscious of his acts, or unable to form in his mind a deliberate intention to take the life of the deceased, provided they believe the life of the deceased was taken as charged."

We are aware, that text writers frequently say that drunkenness is no excuse for crime, but rather an aggravation of the offense. That it is no excuse is certainly true, but that it should be held in law to aggravate crime is not, we conceive, a correct proposition. In ethics it is no doubt true, but how it can aggravate a willful, deliberate murder, perpetrated with malice preconceived, and deliberately perpetrated, we are unable to comprehend. Or that it will aggravate what in law is only manslaughter if perpetrated by a sober man, into murder if committed by a drunken man, is not, we conceive, true. Or that it increases a minor offense to one of a higher grade, is not true. Whilst it is not grounds for reversing a judgment, it is perhaps calculated to prejudice the defendant's case, and a court might well omit to give it, or at least modify it before it should be given.

The subsequent portion of the instruction is not so clear. But if we understand its purport, it is, that if the accused was intoxicated to that degree that he was incapable of being conscious of his acts, or could not form a deliberate purpose of taking the life of deceased, then the crime would be reduced from murder to manslaughter. If the homicide is manslaughter and not murder, it is because the act was committed without malice express or implied, and without any mixture of deliberation whatever. It is not for the reason that the accused was

incapable of forming an intention to do the act. A drunken man may, no doubt, commit manslaughter, but to render it such, there should be the same degree of provocation which would make it that crime if perpetrated by a sober man. This instruction does not assert this rule but excludes it, as it informs the jury that if accused was drunk, he should have been so highly intoxicated that he was incapable of forming a deliberate intention to take the life of deceased, or conscious of his own acts. If there was provocation which would have rendered it manslaughter, for a man not intoxicated, to have performed the act, then that fact was by this instruction excluded from the consideration of the jury, and was therefore erroneous.

It is likewise insisted, that the court erred in receiving the verdict after it was adjourned, and before it was again opened. In this we perceive no error. It was held by this court in *Green's case*, 16 Ill. 234, that after the court had adjourned, but before the judge had left the court room, a verdict might be received, and that it would support a judgment. In the case of *Baxter* v. *The People*, 3 Gilm. 368, it was held that whilst the court could not perform any judicial act on Sunday, the reception of a verdict only being a ministerial act, it might be received and recorded on that day. Without enlarging upon the principles and reasons which induced those decisions, it is sufficient to say that they are decisive of this question.

It was also insisted that the court below erred in not disposing of the motion in arrest of judgment, before rendering final judgment in the case. It is perfectly apparent that the rendition of a final judgment disposes of a motion in arrest and for a new trial, and although not formal, such is its effect. As it is not pretended that there was any defect in the indictment or record, which could be reached by that motion, the court committed no error in overruling it, by rendering the final judgment.

34—38th Ill.

But for the errors indicated, the judgment of the court below is reversed and the cause remanded for a new trial.

*Judgment reversed.*