EDWARD S. DREYER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1900—Rehearing denied December 7, 1900.*

1. INDICTMENT—*indictment for failure to pay over trust funds need not negative theory of unavoidable loss.* An indictment under section 215 of the Criminal Code, for failure of the accused to pay over trust funds to his successor, need not negative the language of the second proviso to such section, which excepts from penitentiary sentence one whose failure to pay over trust funds is due to unavoidable loss or accident, since such proviso is only intended to give the accused the benefit of such defense, and not to require the People to allege and prove the negative.

2. CRIMINAL LAW—*discharge of jury for failure to agree does not bar second trial.* The discharge of the jury by the court without the consent of the accused, where they have failed to agree upon a verdict after being out a reasonable time and it does not appear probable that they will agree, does not bar a second trial for the same offense upon the ground of former jeopardy.

3. SAME—*omitting to swear officer in charge of jury is waived by failure to object.* The requirement of the statute that the jury in a criminal case shall be placed in charge of a *sworn* officer upon retirement is waived by the failure of the accused to object at the time to the omission of the oath, and the question is thereafter not open to review upon writ of error, although the point is urged as a ground for new trial by motion supported by affidavits. (*McIntyre* v. *People,* 38 Ill. 514, and *Lewis* v. *People,* 44 id. 452, distinguished.)

4. EVIDENCE—*what not admissible in trial of officer for failure to pay over trust funds.* The treasurer of a park board indicted for failure to pay over trust funds to his successor cannot show in defense that, notwithstanding he had deposited the funds in his general account at the bank, which was greatly overdrawn, he had an agreement with the bank that it would honor his checks to an unlimited amount, for which he had given security, and that if the bank had been allowed to continue business it would have paid the money demanded of him, since the loss resulting from such a transaction cannot be regarded as unavoidable.

5. BILL OF EXCEPTIONS—*amendment of, after term, cannot be based on recollection.* An amendment of a bill of exceptions after term, and after the bill has been settled and signed, must be based upon some official or *quasi* official note or memorial paper remaining in the files or included in the record, and not upon the mere recollec-

tion of the judge or any other person, nor upon *ex parte* affidavits or testimony after the event.

6. SAME—*when motion for leave to suggest diminution of record will be denied.* After judgment has been affirmed and petition for rehearing filed, a motion for leave to suggest diminution of the record will be denied, where the new fact sought to be introduced into the record would not be decisive and the rehearing would have to be denied in any event.

Special concurrence by CARTWRIGHT, J., and BOGGS, C. J.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

MORAN, MAYER & MEYER, for plaintiff in error:

The indictment is bad, as it does not negative the exception in the statute "that such failure or refusal is occasioned by unavoidable loss or accident." *Beasley* v. *People*, 89 Ill. 571; *United States* v. *Cook*, 17 Wall. 168.

The motion for a new trial should have been allowed for the reason that the jury were not in charge of officers sworn according to law, and for the further reason that the officers in charge of the jury were not sworn at the time prescribed by law, nor was the statutory oath administered to said officers. *Jackson* v. *People*, 36 Ill. App. 88; *McIntyre* v. *People*, 38 Ill. 520; *Lewis* v. *People*, 44 id. 462; *Sanders* v. *People*, 124 id. 224; *Farley* v. *People*, 138 id. 100; *Buxton* v. *State*, 14 S. W. Rep. 480; *State* v. *McCormick*, 46 Pac. Rep. 779.

The unwarranted discharge of the jury upon the former trial worked a discharge of the defendant, and upon being called for trial again he was entitled to his discharge, having been once in jeopardy. "No person shall be compelled in any criminal case to give evidence against himself or be twice put in jeopardy for the same offense." Bill of Rights, sec. 10; Const. of 1870, p. 54, Hurd's Stat.

The discharge of the jury under the circumstances in this case discharged the defendant. *Farley* v. *People*, 138 Ill. 97; Hurd's Stat. chap. 28, p. 399; chap. 38, secs. 434,

435, p. 636; *Logg* v. *People*, 8 Ill. App. 99; *Wright* v. *State*, 5 Ind. 291; *Mahala* v. *State*, 10 Yerg. 532; *Ex parte Vincent*, 43 Ala. 402; *McCauley* v. *State*, 26 id. 135; *Williams* v. *Commonwealth*, 2 Gratt. 568; *Ned* v. *State*, 7 Port. 187; *State* v. *Altman*, 64 N. C. 364; *State* v. *Ephriam*, 19 id. 162; *Whitten* v. *State*, 61 Miss. 718; *Helm* v. *State*, 6 So. Rep. 322; *Morgan* v. *State*, 13 Ind. 215; *Miller* v. *State*, 8 id. 325; *Crookham* v. *State*, 5 W. Va. 512; *State* v. *Schuckart*, 18 Neb. 754; *Murphy* v. *State*, 41 N.W. Rep. 792; *Conklin* v. *State*, 25 Neb. 784; *Commonwealth* v. *Fitzpatrick*, 121 Pa. 109; *Commonwealth* v. *Highlands*, 111 Pa. St. 1; *Commonwealth* v. *Cook*, 6 S. & R. 577; *Commonwealth* v. *Clue*, 3 Rawle, 497; *Commonwealth* v. *Robinson*, 88 Ky. 386; *O'Brien* v. *Commonwealth*, 72 id. 339; *State* v. *Allen*, 54 Pac. Rep. 1060; *Wright* v. *State*, 32 S. W. Rep. 701; *Powell* v. *State*, 17 Tex. App. 345; *Rudder* v. *State*, 15 S. W. Rep. 717.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, and ALBERT C. BARNES, of counsel,) for the People:

In general, an exception or proviso which is not in the enacting clause, whether in the same section with it or not, need not be negatived by the indictment. 1 Bishop on Crim. Proc. sec. 639, and authorities cited; *Lequat* v. *People*, 11 Ill. 330; *Metzker* v. *People*, 14 id. 101; *Beasley* v. *People*, 89 id. 571.

The question always is, whether the exception is so incorporated with and becomes a part of the enactment as to constitute a part of the definition or description of the offense. *State* v. *Abbey*, 29 Vt. 60; *United States* v. *Cook*, 17 Wall. 168; *State* v. *Rush*, 13 R. I. 198; 1 Bishop on Crim. Proc. sec. 631, *et seq.*

Where the officer who takes charge of the jury on retiring to consider their verdict is not sworn, objection and exception should be taken and preserved by bill of exceptions. *McKinney* v. *People*, 2 Gilm. 540; *Pate* v. *People*, id. 644; *Holmes* v. *People*, 5 id. 478; *McIntyre* v. *People*, 38 Ill. 514; *Knouff* v. *People*, 6 Ill. App. 154; *United States* v. *Ball*,

163 U. S. 662; *Atterberry* v. *State*, 56 Ark. 515; *State* v. *Frier*, 118 Mo. 648.

The accused has no right to stand by and suffer irregular proceedings to take place, and then ask to have the proceedings reversed on error on account of such irregularities. If he neglects in proper time to insist on his rights he waives them. *McKinney* v. *People*, 2 Gilm. 540; *Chase* v. *People*, 40 Ill. 352; *Dyer* v. *People*, 84 id. 624; *Kelly* v. *People*, 132 id. 371; *Eastman* v. *People*, 93 id. 113; *Henning* v. *State*, 106 Ind. 386; *Hunter* v. *State*, 43 Ga. 483; *Polin* v. *State*, 14 Neb. 540; *Waterman* v. *State*, 116 Ind. 51; *Atterberry* v. *State*, 56 Ark. 515; Thompson & Merriam on Juries, sec. 399, note.

The prevailing rule is, that the discharge of a jury without the consent of the defendant, because, after mature deliberation, they are unable to agree upon a verdict, is not an acquittal, and does not entitle the defendant to immunity from further prosecution. Whether they can agree is a question for the sound discretion of the court. *United States* v. *Perez*, 9 Wheat. 579; *Barrett* v. *State*, 35 Ala. 406; *Ex parte McLaughlin*, 41 Cal. 212; *Williford* v. *State*, 23 Ga. 1; *State* v. *Woodruff*, 2 Day, 504; *Logg* v. *People*, 8 Ill. App. 106; *State* v. *Updike*, 4 Harr. 581; *Lester* v. *State*, 33 Ga. 329; *State* v. *Nelson*, 26 Ind. 366; *State* v. *Walker*, id. 346; *Shaffer* v. *State*, 27 id. 131; *State* v. *Wilson*, 50 id. 487; *Hoffman* v. *State*, 20 Md. 425; *People* v. *Schoeneth*, 44 Mich. 489; *Commonwealth* v. *Purchase*, 2 Pick. 521; *Commonwealth* v. *Bowden*, 9 id. 494; *People* v. *Harding*, 53 Mich. 487; *Price* v. *State*, 36 Miss. 533; *Whitten* v. *State*, 61 id. 723; *People* v. *Greene*, 13 Wend. 57; *Goodwin* v. *People*, 18 Johns. Cas. 200; *State* v. *Jefferson*, 66 N. C. 309; *Dobbins* v. *State*, 14 Ohio St. 493; *State* v. *Nelson*, 35 L. R. A. 560; 1 Archbold on Crim. Pl. & Pr. 593; *State* v. *McKee*, 1 Bailey, 651; *Smith* v. *State*, 22 Tex. App. 197; *Moseley* v. *State*, 33 Tex. 671; Proffatt on Jury Trials, secs. 484, 485; 2 Graham & Waterman on New Trials, 118; 1 Bishop on Crim. Law, (6th ed.) sec. 1033; 11 Am. & Eng. Ency. of Law, 953.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the criminal court of Cook county to reverse a judgment of conviction against plaintiff in error, under section 215 of our Criminal Code. The indictment was to the February term, 1898, of that court, and consisted of one count. It charges that the defendant was, on and before December 21, 1896, treasurer of the West Chicago Park Commissioners, and authorized to collect, receive, safely keep and disburse the moneys, revenues, bonds, warrants and funds of said corporation, and that as such treasurer, prior to said December 21, 1896, he received of the funds of said park commissioners $316,013.40, which he had failed to pay over to Fred M. Blount, his successor in office, on the latter's demand. On July 26, 1899, counsel for the defendant moved to quash the indictment, but the motion was overruled and he entered his plea of not guilty. On August 29 he was regularly put upon trial, and on September 2 the following order was entered: "This day come the said People, by Charles S. Deneen, the State's attorney, and the said defendant, as well in his own proper person as by his counsel, also come, and also come the jurors of the jury aforesaid, who being now returned in court and being unable to agree upon a verdict are thereupon, by order of this court, discharged from further consideration of this cause." February 19, 1900, he was again put upon trial, which resulted in this conviction.

It was not denied on the trial that $316,013.40 of the park commissioners' funds came into the hands of the defendant, as its treasurer, which he failed to pay over to his successor on demand, and the only defense attempted to be interposed was, that his failure to pay it over was the result of unavoidable loss or accident. The several grounds of reversal now urged by his counsel are as follows: The indictment is fatally defective; the plain requirement of the law was violated in placing the jury

in charge of officers not sworn at the time or in the manner prescribed by statute; the defendant has once been tried for the same offense and the jury arbitrarily discharged when they were about to acquit the defendant; the trial judge admitted evidence not competent to prove the crime charged and excluded evidence competent as a matter of defense; that statements were made by the trial court prejudicial to the defendant; that erroneous instructions were given on behalf of the People, and that the defendant's instructions were erroneously modified. We will consider these points in a somewhat different order from that in which they are stated in the briefs and argument.

The statute upon which the indictment was found provides that if certain officers having the custody of funds "shall fail or refuse to pay or deliver over the same when required by law, or demand is made by his successor in office or trust, or the officer or person to whom the same should be paid or delivered over, or his agent or attorney, authorized in writing, he shall be imprisoned in the penitentiary not less than one nor more than ten years: *Provided*, such demand need not be made when, from the absence or fault of the offender, the same cannot conveniently be made: *And, provided,* that no person shall be committed to the penitentiary under this section, unless the money not paid over shall amount to $100, or if it appear that such failure or refusal is occasioned by unavoidable loss or accident." (Rev. Stat. 1874, p. 384.)

The only objection urged against the indictment under the motion to quash was, that it failed to negative the last proviso, namely: that it did not allege that the failure or refusal to pay over the money was not occasioned by unavoidable loss or accident. The rule as stated by this court is, that "where an act is made criminal, with exceptions embraced in the same clause of the statute which creates the offense, so as to be descriptive of the

offense intended to be punished, it is necessary, in the indictment stating the act had been done, to negative the exceptions so as to show affirmatively the precise crime defined has been committed;" also, that "there are exceptions to this general rule, as, where the exception or proviso be in a subsequent clause of the statute, or if in the same section and not incorporated with the enacting clause by any apt words of reference, it is, in that case, a matter of defense and need not be negatived in the pleading." (*Beasley* v. *People*, 89 Ill. 571.) Counsel do not disagree as to this being a correct statement of the law as laid down by the uniform current of authority, but it is insisted on behalf of plaintiff in error that the foregoing proviso *is* embraced in the same clause of the statute which creates the offense, *is* descriptive of the crime intended to be punished and *is* incorporated with the enacting clause, and therefore the indictment should have charged that the failure or refusal was not occasioned by unavoidable loss or accident. The plain language of the statute, in our opinion, refutes this position. The definition of the offense intended to be punished, and the penalty denounced against it, are clearly stated in a complete sentence, wholly independent of either of the succeeding provisos. Although they are in the same section, they are not "incorporated with the enacting clause by any apt words of reference." The language "if it *appears*," etc., clearly indicates an intention to allow an officer the benefit of such a defense, and not to require the State to allege and prove the negative. The construction insisted upon would practically destroy the efficacy of the law. It would be easy enough to make the allegation, but in many, if not most, cases, it would be impossible to make the negative proof. The motion to quash the indictment was properly overruled.

The next assigned error insisted upon is, that the court below refused to sustain the defense of former jeopardy. Conceding that the question was regularly

raised on the trial, it was properly overruled.   The plea
was based upon the theory that by the discharge of the
jury upon the first trial without the consent of the de-
fendant he was entitled to be then acquitted, and could
not be legally put upon trial a second time.   As shown
above, the jury was discharged for the reason that it was
unable to agree.   It had retired to consider of its verdict
the day before, about five o'clock in the afternoon, and
had remained out during the night and until half-past
nine in the forenoon.

The question for what causes the jury, in criminal
trials, may be discharged before it has returned its ver-
dict into court, the defendant not consenting, without the
trial resulting as jeopardy in bar of another trial, has
frequently arisen in the courts and the decisions thereon
are not harmonious.   It has never been passed upon by
this court.   It is true that by the common law, as well
as by our statute, it is contemplated that when the jury
retires it shall be kept together until a verdict is reached
and returned into court; but it needs no reasoning to
show that this theory of the law cannot always be car-
ried into effect without defeating justice, and it has long
been the settled law that, without the consent of the
prisoner, the court has the power to discharge a jury
before verdict "from necessity," and to hold him for an-
other trial.   On this proposition the courts agree.   The
conflict has grown out of a difference of opinion as to
what fact or circumstance should be deemed to constitute
a necessity for such discharge.   It has been held that the
causes which create the necessity must fall under one of
three heads, namely:  (1) Where the court is compelled
by law to be adjourned before the jury can agree upon
a verdict;  (2) where the prisoner by his own misconduct
places it out of the power of the jury to investigate his
case correctly, thereby obtaining an unfair advantage of
the State, or is himself, by the visitation of providence,
prevented from being able to attend to his trial;  and

(3) where there is no possibility for the jury to agree upon and return a verdict. The courts of a few States,—principally Pennsylvania, Virginia, North Carolina and Tennessee,—have held that the failure of a jury to agree merely because they cannot bring their several minds to the same conclusion is not an impossibility to agree within the meaning of the last named class, but that the failure must result from some physical impossibility, such as the sickness or insanity of some one or more of the jurors; and, of course, such holding leads to the final conclusion, that in the absence of some necessity arising under the second class no discharge can be ordered for a mere failure to agree upon a verdict until the adjournment of the term at which the trial is had. The more prevalent doctrine, however, is thus stated by Archbold on Criminal Practice and Pleading, (vol. 1, p. 593): "The general rule is, that the jury must be kept together from the time they are first charged with the prisoner or defendant until they deliver their verdict, unless the prisoner consents to their being discharged, or for causes occurring in which the judge, from necessity, is obliged to discharge them. If they cannot agree upon their verdict, and they appear not likely to do so, the judge, chairman or recorder, in the exercise of his discretion, may discharge them as soon as it becomes a matter of necessity, of which he is the judge, and he usually discharges them after they have been one night locked up in the jury room, deliberating on their verdict." Also by Graham & Waterman on New Trials, (vol. 2, p. 122): "The discharge of a jury in a criminal case, without agreeing on a verdict, is a matter resting in the sound discretion of the court in which the trial is had."

The language of the Supreme Court of the United States, in *United States* v. *Perez*, 9 Wheat. 679, is as follows: "We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, if in

their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act or the ends of public justice would otherwise be defeated. * * * We are aware that there is some diversity of opinion and practice on this subject in the American courts, but after weighing the question with due deliberation we are of opinion that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial." And this, it can be safely said, is the consensus of opinion in all the courts of last resort throughout the Union in which the question has been raised, except in the four States named above, and possibly one or two others; and the courts of Pennsylvania and Virginia hold the same rule in cases not capital. Many of the cases are cited in *Ex parte McLaughlin*, 41 Cal. 211.

But, independently of the fact that by far the greater number of cases sustain the latter rule, we are clearly of the opinion that it is more in consonance with reason and the procurement of just verdicts. That wrong may result sometimes from the too hasty discharge of a jury is true; but to require the holding of a jury together from day to day, after they have had a reasonable time for deliberation and failed to return a verdict, and after the court is convinced that they will not agree except under duress of being confined until the end of the term, or longer, (as might be done under our statute,) would be little less impracticable and unreasonable, not to say absurd, than the old rule, which, in cases affecting life or member, forbade the discharge of the jury for any cause until it had returned a verdict. Every judge who has presided over criminal trials knows that cases are often submitted to juries upon which intelligent men cannot honestly avoid disagreement on the question of guilt or innocence. To compel consent to a verdict under such circumstances, under penalty of being confined for days, weeks or possibly months, would shock the sense of jus-

tice and often result in dishonest and unjust acquittals or convictions.

As to the point that the trial court erred in the admission and exclusion of evidence, it may be admitted that the prosecution was allowed to introduce evidence of facts not primarily material or necessary to a conviction, but we are unable to see how the defendant was in any way prejudiced by that testimony. The substantial ground of contention under this head is, that the court excluded competent testimony offered on behalf of the defendant. His counsel stated: "I want to prove that E. S. Dreyer & Co. kept their bank account with the National Bank of Illinois; that from time to time during the course of business, lasting through seventeen years and down to the time of its failure, Dreyer's bank account was overdrawn with the National Bank of Illinois; that to secure the National Bank of Illinois, Dreyer & Co. deposited collateral in the shape of securities, as well as the conveyance of large real estate holdings to the bank; that that was upon the express agreement that the checks of Dreyer & Co. should always be paid; and that when it came to the taking of the West Park board account, it was with the express understanding with Mr. Schneider and Mr. Hammond, vice-president and manager of the bank, that Dreyer having that security in their hands and having the West Park account deposited with them, they would pay every check drawn on that fund. I also propose to prove that prior to the West Park board account being in that bank in pursuance of that contract, the National Bank of Illinois advanced to Dreyer & Co. over $1,000,000, and that under this agreement that bank paid every check and draft of the West Park board down to the time that the receiver thereof was appointed. I also propose to prove that, relying upon that agreement and acting under it, Dreyer continued his account in that bank, putting in the West Park moneys with the entire account; that the National Bank of Illinois continued to

perform the contract for which they had Dreyer's security, down to the day possession was taken (a receiver was appointed for the National Bank of Illinois); that the National Bank of Illinois had made the provision to pay these West Park moneys and had the security to do it." This offer, on objection by opposing counsel, was denied and an exception duly taken.

The offer amounted to no more than to show that, notwithstanding the defendant had placed the West Park funds in the National Bank of Chicago with the general account of Dreyer & Co., which account was overdrawn, he had an agreement with said bank that it would pay all checks drawn by him, to an unlimited amount, for which he had given it security, and that if the bank had been allowed to continue business it would have, under that agreement, paid the money demanded of him. That the transaction offered to be proved would, on the part of the bank, have been contrary to the rules of safe banking we think must be admitted. Under such a method of doing business it was certainly to be expected that the result which followed would sooner or later take place, and on the part of the defendant the disposition of the funds was in direct violation of his duty as a public officer and contrary to good business rules. Anderson, in his Dictionary of Law, (p. 13,) defines "avoidable, unavoidable and inevitable accident" as follows: "Accidents are (1) such as are inevitable or absolutely unavoidable, because effected or influenced by the uncontrollable operations of nature; (2) such as result from human agency alone, but are 'unavoidable' under the circumstances; (3) such as are voidable because in a given case the act was not called for by any duty or necessity, and the injury resulted from the want of that extraordinary care which the law reasonably requires of one doing such a lawful act, or because the accident was the result of actual negligence or folly, and might, with reasonable care adapted to the emergency, have been avoided." That the loss re-

sulting from the manner of doing business between the
defendant and the National Bank of Illinois, as proposed
to be shown, was an avoidable loss or accident, and not
an unavoidable one, we think cannot be fairly questioned.
It was not error to exclude the evidence.

We have considered the several points of objection to
instructions given for the People, and the modification of
some of those asked on behalf of the defendant, and find
no reversible error in that regard.   Neither do we think
there is substantial ground for the contention that the
presiding judge made statements in the presence of the
jury prejudicial to the defendant.   The remarks deemed
prejudicial were made in ruling upon a question raised
upon the trial, and we fail to discover in the language
employed anything, as is claimed, indicating an opinion
that defendant was guilty of the charge made against him.

The point that upon the retirement of the jury to con-
sider of their verdict a constable or other officer was not
sworn or affirmed to attend them, remains to be considered.

Section 435 of the Criminal Code of this State (Rev.
Stat. p. 411,) is as follows:  "When the jury retire to con-
sider of their verdict in any criminal case, a constable or
other officer shall be sworn or affirmed to attend the jury
to some private and convenient place, and to the best
of his ability keep them together without meat or drink
(water excepted), unless by leave of the court, until they
shall have agreed upon their verdict, nor suffer others to
speak to them, and that when they shall have agreed on
their verdict he will return them into court: *Provided,* in
cases of misdemeanor only, if the prosecutor for the Peo-
ple and the person on trial, by himself or counsel, shall
agree, which agreement shall be entered upon the min-
utes of the court, to dispense with the attendance of an
officer upon the jury, or that the jury, when they have
agreed upon their verdict, may write and seal the same,
and after delivering the same to the clerk, may separate,
it shall be lawful for the court to carry into effect any

such agreement, and receive any such verdict so deliv-
ered to the clerk as the lawful verdict of such jury."

That it is reversible error, upon a criminal trial for a
felony, to allow the jury to retire for the purpose of con-
sidering of their verdict without placing them in charge
of a sworn officer, as required by this section, is not an
open question in this court. In *McIntyre* v. *People*, 38 Ill.
514, it was said (p. 518): "The language of this section is
explicit and peremptory in the requirement that the jury,
when they retire to consider of their verdict, shall be
placed in charge of a sworn officer. Nor is there any
exception, only in cases of misdemeanors, where the par-
ties, by agreement, may dispense with the requirement,
and even in that case the agreement must not only be
made, but the court is required to enter it upon its min-
utes. In the case of *McKinney* v. *People*, 2 Gilm. 540, this
court said that in capital cases the law indisputably is,
that from the commencement of the trial until the rendi-
tion of the verdict the jury, during all adjournments of
the court, should be placed in charge of an officer, unless
it is otherwise ordered by the court on the consent of the
accused and the attorney for the People." In *Lewis* v.
*People*, 44 Ill. 452, after stating the foregoing section of
the statute, it was again said (p. 454): "These provisions
show the great care and solicitude of the General As-
sembly to secure to every person a fair and impartial
trial; and it is eminently proper, as in many cases the
accused is imprisoned and it is not in his power to pro-
tect his rights from being prejudiced by undue influences.
It should ever be the care of courts of justice to guard
human life and liberty against being sacrificed by public
prejudice or excitement. The jury should be entirely free
from all outside influences from the time they are em-
paneled until they return their verdict and it is accepted
and they discharged, and the legislature have determined
that the provisions of this statute are necessary to ac-
complish the object. It is a provision easily complied

with, and one member of the court, at least, has never, in practice, seen it dispensed with except in cases of misdemeanor. The provisions of the statute are clear, explicit and peremptory. We know of no power, short of its repeal, to dispense with this requirement. In the case of *McIntyre* v. *People*, 38 Ill. 514, it was held to be error, in a case of felony, to omit to swear the officer having charge of the jury." Judgments of conviction were accordingly reversed in both of these cases because of a failure to comply with the requirement of the statute. The correctness of those decisions is recognized in the still later cases of *Sanders* v. *People*, 124 Ill. 218, and *Farley* v. *People*, 138 id. 97.

The point of controversy in the present case is not, however, whether it is reversible error to fail to comply with the statute, but whether the question is properly raised upon this record. No objection or exception was taken by the defendant, at the time of the retirement of the jury, that the officers in charge of it were not sworn, but the question was raised by him for the first time on his motion for new trial, one of the grounds of that motion being, "that when the jury retired to consider of their verdict in said case no constable or other officer was sworn or affirmed to attend the jury, in manner and form as provided by the statute of the State of Illinois." Affidavits and oral evidence were introduced upon the hearing of the motion in support of that ground, and counter-affidavits were filed by the People. The minute clerk of the court, one of the counsel for defendant and a third party made affidavits, and the clerk testified upon the hearing, to the effect that the only oath administered to the bailiffs who had charge of the jury during the progress of the trial and upon their retirement was administered on the 20th day of February, when but four of the jurors had been accepted, and that the form of the oath was: "You and each of you do solemnly swear by the ever-living God that you will take care of this jury

according to law; so help you God." Affidavits made by the bailiffs themselves, and by an assistant of the prosecuting attorney, who participated in the trial, tend to prove that the oath administered was in the statutory form; but these affidavits also show that the only oath administered to them was on the 21st day of February, immediately after the empaneling and swearing of the jury. It is shown by the bill of exceptions that the trial was not concluded and the jury finally sent out until February 28, so that even by the proof made on behalf of the People the only oath taken by the bailiffs was some six days prior to their retirement with the jury, and prior to the introduction of evidence and the subsequent steps of the trial. This cannot be held to be a compliance with the requirement of the statute that "when the jury shall retire to consider of their verdict," etc., "a constable or other officer shall be sworn," etc. To swear the bailiffs immediately upon the jury being sworn, and prior to the introduction of the evidence, the arguments of counsel and instructions of the court,—six or seven days prior to the retirement of the jury to consider of their verdict,—would be little less than farcical. Under such circumstances the oath would be meaningless and obedience to its obligations impossible. The holding in *Sanders v. People, supra,* gives no countenance to such a practice. There the trial was practically ended when the officer was sworn, and he took final charge of the jury under the obligations of that oath. Even that practice was not approved, but in view of the fact that but a short time intervened between the swearing of the officer and the retirement of the jury on the same day, and the officer being sworn in the statutory form, it was held not to be reversible error.

It is, however, insisted on behalf of the People that the record shows such officers were sworn, and that being a part of the record it cannot be contradicted. This point is based upon the fact that by a recital of the

minute clerk in the proceedings of the trial it is stated: "February 28; and the jury heard further arguments of counsel and the instructions of the court, and retired in charge of sworn officers to consider of their verdict." On behalf of the plaintiff in error it is contended that this statement is no proper part of the record, and that, even if it should be so treated, it is consistent with the affidavits filed in support of the motion, and may properly be considered as having reference to the oath which the minute clerk swears was administered on February 20. Clearly, it is not a *necessary* part of the record, and we are inclined to the view that it should not be considered even a proper part of it, within the rule which precludes evidence tending to contradict a record. But so treating the record proper, it is silent as to when and how the officers were sworn, and the presumption must be that the court did its duty in that regard, until the contrary is made to appear. (*McKinney* v. *People*, 2 Gilm. 540.) And in this view it is insisted on the part of the People that the question cannot be properly raised for the first time on a motion for new trial. In support of the contention reliance is placed upon the well understood rule that where a party seeks to question the regularity of a ruling of the court upon the trial of a case he must by timely objection call attention to the matter, and if his objection is overruled, preserve an exception to the ruling, otherwise it is waived. It is urged on behalf of the plaintiff in error that this rule is not applicable to the cause under consideration, where the alleged error is not in an erroneous ruling of the court, made upon a question raised upon the trial, but an omission to comply with a plain and positive requirement of the statute, and where the question is simply whether or not the statutory duty was performed.

The real questions to be determined here, we think, are whether the requirement of the statute is one which can be waived by the defendant by his consent; and if

so, does the mere fact that he failed to object at the time amount to such consent or waiver? Under the more recent rules governing the trial of criminal cases the first of these questions must be answered in the affirmative. In *Reins* v. *People*, 30 Ill. 256, the indictment and conviction was for manslaughter. One of the errors assigned was, that the court had instructed the jury, by consent of the parties, to seal their verdict and separate, and meet the court the following day, when their verdict would be opened and entered of record. It was insisted that under the foregoing section of the statute (which was then section 189) the crime charged against the defendant was but a misdemeanor, and therefore a separation by agreement was authorized by the last clause of that section. But the court, among other things, said (p. 273): "The question then arises, independent of any statute on the subject, when parties in a case not capital consent to such proceedings as are here shown, is the verdict vitiated?" And it was held that it was not, the court saying: "In capital cases even, where life is at stake, the separation of the jury without consent is not of itself error and ground for a new trial. Something more must be shown. It must be shown that the accused might have been prejudiced by it." And it was further said: "The record recites, 'as the jury were about to retire to consider of their verdict it was suggested by the prosecuting attorney, as it was late in the day, the jury had better be allowed to seal their verdict, if they should agree before the court met on the following day, and disperse, and return their sealed verdict into court on the following day, to which proposition the defendant, by his counsel, assented, waiving all exceptions to such separation on the ground of irregularity, if the practice should be held irregular.' We are clear in our opinion that the verdict is not vitiated by this action of the court. No other rule could be adopted consistent with a proper, honest and efficient administration of the law. Where consent has been given,

and even without it, and it is not shown improper influences have been exerted upon the jury during their separation, and no ground afforded for the suspicion of any such influences, it would be but trifling with the administration of the criminal law to listen and give weight to the objection. The statute has nothing to do with this case." And in *McIntyre* v. *People,* where it was urged and held that the omission to properly swear the officer retiring with the jury in conformity with the statute was error, it was said (p. 519): "The legislature has deemed this precaution essential to secure a fair and impartial trial, and it is a right secured to the accused, of which he cannot be deprived by the court or officers of the law; and if the requirement is omitted without his consent he may urge it for a reversal of a judgment of conviction." Numerous cases from this and other courts might be cited in support of the rule, but we deem it unnecessary to do so.

The more difficult question is whether the failure to urge an objection at the time amounts to consent or a waiver of compliance with the statute. In *McKinney* v. *People, supra,* it was said (p. 553): "The law in capital cases undoubtedly is, that from the commencement of the trial until the rendition of the verdict the jury, during all adjournments of the courts, should be placed in charge of an officer, unless it is otherwise ordered by the court, by the consent of the accused and the attorney for the People. * * * In this case, if the jury did separate without the consent of the prisoner it was an irregularity, and the court below would, upon the fact being established, have been bound to set aside the verdict and grant a new trial, unless such separation was the result of misapprehension, accident or mistake on the part of the jury, and under circumstances to show that such separation could by no possibility have resulted to the prejudice of the prisoner. The prisoner was in court with his counsel, and if the court had permitted the jury to disperse without the consent of the prisoner, such

fact, being established by a bill of exceptions, would have been sufficient ground to reverse the judgment. As it is, this court is bound to infer, either that the court directed the jury to be kept together, or if they dispersed it was by consent. * * * A prisoner on trial, under our laws, has no right to stand by and suffer irregular proceedings to take place and then ask to have the proceedings reversed, on error, on account of such irregularities. The law, by furnishing him with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglect in proper time to insist on his rights he waives them." In *Holmes* v. *People*, 5 Gilm. 478, the point that sworn officers did not accompany the jury upon their retirement was made, and it was said: "The record states that the jury retired to consider of their verdict, in charge of a sworn officer of the court, and the presumption is that the court performed its duty by requiring the proper oath to be administered. If the officer was not, in fact, sworn, the defendants should have objected to the irregularity at the time, and if not corrected by the court, have taken a bill of exceptions.—*McKinney* v. *People*, 2 Gilm. 540." To the same effect are *Atterbury* v. *State*, 56 Ark. 515, *State* v. *Frier*, 118 Mo. 650, and *United States* v. *Ball*, 163 U. S. 662, cited by counsel for the People. See, also, *People* v. *Johnson*, 110 N. Y. 134.

The cases of *McIntyre* v. *People*, and *Lewis* v. *People*, *supra*, are authorities to the effect that the fact that the officer retiring with the jury was not sworn, in conformity with the statute, may be shown by affidavits heard on motion for new trial, embodied in the bill of exceptions; but the point whether the oath should be treated as waived because the record did not show an objection by the defendant at the time of the retirement, was not raised or decided in either of those cases. It is true that in the cases cited from other States the statutes involved were somewhat different from our own, but the princi-

ple decided is not materially affected by the distinction. The law making it the duty of the court to place the jury in charge of sworn officers is no more positive or imperative than the duty of seeing that the jury is kept together and not permitted to communicate with others, and we see no good reason for holding that the one requirement may not be waived by a failure to object, as well as the other.

It is therefore held that the question whether or not, upon the retirement of the jury to consider of its verdict, it was placed in charge of a constable or other officer sworn to attend it, as prescribed by statute, is not properly raised by the record, and therefore not available as error in this court.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT: I concur in affirming the judgment in this case and in the views expressed in the foregoing opinion, except as to the assignment of error based on the alleged fact that the jury was not placed in charge of an officer sworn according to law. Upon that question I have been unable to reconcile the holding of the opinion that the fact the officer retiring with the jury was not sworn in conformity with the statute may be shown to the trial court by affidavits on a motion for a new trial and proved to this court in the same way, with the decision that the failure of the defendant to object on account of such fact at the time the jury retired amounted to consent or waiver of his right. If it is necessary for a defendant to make an objection to the court at the time the jury retires that the law has not been complied with and the officer has not been sworn, the court must rule on the objection and determine the fact whether the officer has been sworn. The statute is plain and peremptory, and the ruling on the objection must depend solely upon the fact whether the oath has been

administered or not. That question of fact must be decided upon what is before the court at the time, and not from affidavits filed after the ruling on a motion for a new trial. If the fact that the officer was not sworn could be proved by affidavits at all, it must be proved then or the court could not be held in error in overruling the objection. If the objection is properly overruled, it seems manifest that the ruling could not be ground for a new trial, or become erroneous on account of affidavits subsequently presented to the court. I do not see how the two propositions can be harmonized.

The claim of plaintiff in error is, that he has proved to the trial court and to this court, by affidavits filed with his motion for a new trial, that an officer was not sworn to attend the jury upon their retirement, and that therefore the trial court erred in not granting such new trial. The judge of the criminal court, in making up and settling the bill of exceptions, did not find or recite that the officer was not sworn, and my concurrence in not sustaining the assignment, based on that fact, is on the ground that the fact cannot be proved by affidavits and made a part of the record in that way. It was the duty of the court to send a sworn officer with the jury, (*McKinney* v. *People*, 2 Gilm. 540,) and if the duty was not performed it was the error of the court. It was as much the duty of the court as it was to have the defendant arraigned, the jury and witnesses sworn and the proceedings conducted according to law. The court might administer the oath or direct the clerk to do it, and necessarily whether it was done was within the knowledge of the court. The law presumes, until the contrary appears, that the court performed the duty and that the officer was sworn according to the statute. (*McKinney* v. *People, supra; Pate* v. *People*, 3 Gilm. 644; *Holmes* v. *People*, 5 id. 478; *McIntyre* v. *People*, 38 Ill. 514.) The alleged fact that the officer was not sworn can only be shown by a recital in the bill of exceptions, and if it does not appear

in that way it cannot be considered. The office and purpose of a bill of exceptions is to recite and make a part of the record the events that transpire in the course of a trial. It must recite the facts out of which the question of law arises, and the ultimate decision what those facts are rests with the trial judge. "The law makes him, and properly so, the judge of the propriety and accuracy of the act he is called on to solemnly verify the truth of, so that it shall become a part of the record in the cause, and it is not for other parties to determine the truth." (*People* v. *Pearson,* 2 Scam. 189.) In *Eastman* v. *People,* 93 Ill. 112, the bill of exceptions failed to show an exception to a ruling of the court, and counsel claimed that the exception was in fact taken and a bill of exceptions was presented showing the fact but the judge substituted another bill not showing the fact. The court said (p. 113): "Assuming this statement of counsel to be true, is it not manifest that to act upon it would be a departure from all precedent and a palpable violation of duty on the part of the court? Can there be anything more thoroughly settled and universally understood, than that a court of review can only look at the record before it, and that in determining the rights of the parties thereto, must accept the record as an absolute verity? Even if the members of the court personally know a fact important to the rights of the parties, which by innocent mistake or fraudulent design has been omitted in making up the bill of exceptions, they would be powerless to act upon such knowledge. We must therefore conclusively presume in this as in all other cases, that the bill of exceptions speaks the facts as they really exist." In this case there is an omission of the alleged fact on which an assignment of error is based. The judge who settled the bill of exceptions heard affidavits, as he might do, but did not find or recite the fact. A judge may examine notes and minutes, re-call witnesses to be examined by him alone, and take all available means to determine the

facts, but the question whether the bill fully and fairly presents the facts occurring in his presence is confided to his judgment and his decision is final.   3 Ency. of Pl. & Pr. 446, 447;  Elliott's Appellate Procedure, sec. 798; *Emerson* v. *Clark*, 2 Scam. 489;  *Hake* v. *Strubel*, 121 Ill. 321; *People* v. *Anthony*, 129 id. 218.

It is because of this established rule that, while *mandamus* will lie to compel a judge to settle a bill of exceptions, no court will direct what he shall put in it.  He can only be required to sign such a bill as he believes recites the facts of the case,  (*Ex parte Bradstreet*, 4 Pet. 102,) and affidavits of alleged facts are unavailing for that purpose.   (2 Greene, 394.)   The Supreme Court of Wisconsin refused to compel a judge to insert in a bill of exceptions an instruction which it was claimed he gave to the jury which he denied having given, although the instructions and exceptions thereto were reduced to writing by counsel at the trial and signed by the judge.  This was on the ground that a judge can only be compelled to state the facts occurring at the trial according to his recollection.  (*State* v. *Noggle*, 13 Wis. 380.)  Facts cannot even be brought before a court of review by stipulation of the parties, where not recited in the bill of exceptions.

Following the rule that the judge must recite in the bill of exceptions what occurs on the trial, the court held in *Mayes* v. *People*, 106 Ill. 306, that the facts could not be shown by affidavit on a motion for a new trial.   The attempt was to show in that way unwarranted statements by the State's attorney in his argument to the jury.  The judge did not certify the fact of the statements being made.   The court said, if the fact occurred it was to be presumed the judge knew it; that the affidavit of a defendant could not be made to override the recitals of the bill of exceptions as to what occurred upon the trial, and that the judge may have disregarded the affidavit because he knew it to be untrue.   In this case the judge knew whether he administered the oath or caused it to be done,

and did not need affidavits to bring it to his attention. He might hear affidavits in settling the bill of exceptions to aid his recollection and assist him in deciding as to the fact, but if they were unavailing to convince him they raise no question here. The failure of the judge to find and recite the fact is in effect a finding that it did not exist, and he may have disregarded the affidavits because he knew them to be untrue. The *Mayes case* was followed and the same ruling made in *Scott* v. *People,* 141 Ill. 195, and *Peyton* v. *Village of Morgan Park,* 172 id. 102.

A party may be entitled to a new trial, not on account of any error of the court, but by reason of misconduct of a party or an officer or the jury out of court affecting the result of the trial, and in passing on a motion for a new trial on such a ground the court must necessarily hear evidence as to the fact and decide from such evidence. A party may allege an exception to the ruling in such a case and have it reviewed, but has no such right as to facts within the knowledge of the court.

Mr. CHIEF JUSTICE BOGGS concurs in the separate opinion of Mr. Justice CARTWRIGHT.

Subsequently, on consideration of the motion of the plaintiff in error for leave to suggest a diminution of the record, which motion was considered and decided in connection with the petition for rehearing filed herein, the following additional opinion was announced orally by Mr. Justice CARTWRIGHT:

The judgment of this court has heretofore been entered in this cause affirming the judgment of the criminal court of Cook county against plaintiff in error, and he has filed a petition for a rehearing and a motion for leave to suggest a diminution of the record and to file an additional and amended bill of exceptions. The motion is accompanied by the additional and amended bill which it is proposed to file, which recites that plaintiff in error

made application to the judge who tried the cause in the criminal court, and said judge, upon considering certain affidavits and a stenographer's notes of the testimony of one Henry C. McFall,—all which affidavits and testimony were heard and considered on the motion for a new trial and were a part of the bill of exceptions and record in this court before this amendment,—came to the conclusion that no oath was administered after February 21, 1900, to the bailiffs who had charge of the jury, and therefore said judge certifies to said fact.

In passing upon this motion it is not necessary to decide whether we might, in the exercise of a sound discretion and in furtherance of the ends of justice, permit a proper amendment of a record after the decision of a cause and re-open such cause for further consideration upon the new record. In cases where a bill of exceptions may be amended after the term at which the judgment was rendered and after the bill has been settled and signed, for the purpose of supplying an omission or correcting a mistake, the amendment must be based upon some official or *quasi* official note or memorandum or memorial paper remaining in the files of the case or upon the record of the court. A fact proposed to be made a part of the record by amendment of a bill of exceptions cannot rest in the recollection of the judge nor of any other person. It cannot be based upon *ex parte* affidavits or testimony after the event, and the only basis of the proposed amendment is of that kind. The affidavits and the testimony of McFall were presented to the trial court on the motion for a new trial, and purported to give the recollection of persons as to what occurred at the trial. They were not made or kept as a record of the event at the time it is alleged to have occurred, and all that is proposed is, that the trial judge, upon their being presented to him again, shall certify his opinion or conclusion that the bailiffs were not sworn because those persons made affidavits or testified after the trial that they were

188—5

not sworn. That cannot be done by way of amendment of the record.

A further and all-sufficient reason for refusing to grant the motion is, that the amendment would be of no benefit to the plaintiff in error. If we should permit the additional and amended bill of exceptions to be filed and not grant the petition for a rehearing it would not benefit him, because the judgment of affirmance would stand against him in full force, as before. That judgment was not based upon the non-existence of the fact now sought to be introduced into the record. The opinion of the court in pursuance of which the judgment was affirmed conceded that the bailiffs were not sworn, as required by the statute, and decided the case upon the ground that plaintiff in error, by failing to object at the time, waived his right to assign error for a failure to swear them. The members of the court who concurred in that opinion are not of any different opinion now upon that question, and consequently a rehearing could not be granted if the amended bill of exceptions should be filed and the fact be brought into the record.

The motion for leave to suggest a diminution of the record and to file the additional and amended bill of exceptions is denied, and the petition for rehearing is also denied.

*Rehearing denied.*