## CHRISTOPHER RAFFERTY.

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. CHANGE OF VENUE—*in capital case.* Where one charged with the crime of murder filed his petition for a change of venue, properly verified, showing that he feared he would not receive a fair and impartial trial in the court in which the cause was pending, on account that the inhabitants of the county were prejudiced against him: *Held,* that the court had no discretion to refuse the application.

2. SAME—*act of 1861 construed.* The act of 1861, relating to change of venue in criminal cases, relates solely to offenses which are not punishable with death; and as to capital cases, left the law, as contained in the Revised Statutes of 1845, unchanged.

3. DRUNKENNESS—*as affecting crime.* It is a well settled rule of the common law, recognized in our criminal code, that voluntary drunkenness is no excuse for crime; and when, without intoxication, the law would impute to the act a criminal intent, as in the case of wanton killing without provocation, drunkenness is not available to disprove such intent.

4. SAME—*evidence of in criminal case.* As under our statute it belongs to the jury to fix the punishment for murder, which may be either death by hanging, or imprisonment in the penitentiary for life, or for a term not

less than fourteen years, it is competent to prove, on the trial, that the accused was intoxicated at the time of the homicide, as showing his condition, and in that respect, it constituting a part of the *res gestæ,* to enable the jury intelligently to graduate the punishment. But proof of intoxication an hour or so before the commission of the homicide is not admissible.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

This was an indictment against the plaintiff in error for the murder of Patrick O'Meara. The facts involved in the decision are stated in the opinion of the court.

Mr. EDWARD A. SMALL, for the plaintiff in error.

Mr. C. H. REED, State's Attorney, for the People.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Christopher Rafferty was indicted, tried and convicted of murder, in the criminal court of Cook county, and sentenced to be executed.

The case is brought before this court by writ of error.

One of the errors assigned is the refusal of an application, by the defendant, for a change of venue. The petition therefor was as follows:

"STATE OF ILLINOIS, } ss.
    *Cook county.*   }

"*The September Term of the Criminal Court of Cook County, in said State, in the year of our Lord, A. D.* 1872.

"THE PEOPLE OF THE STATE OF ILLINOIS }
        *vs.*       } *Indictment for Murder.*
   CHRISTOPHER RAFFERTY.  }

"The petition of Christopher Rafferty, the defendant and accused above named, respectfully represents to his Honor, the Judge of said court, that the petitioner fears he will not receive a fair and impartial trial in the court in which said trial is pending, on account that the minds of the inhabitants of

said Cook county, wherein said trial is pending, are prejudiced against the petitioner. The petitioner further states that he did not ascertain the existence of such prejudice until the third day of September, A. D. 1872, and two days next before this date. He, therefore, prays for a change of venue in said cause, pursuant to the statute in such cases made and provided.

"Dated September 4, 1872.

his

"CHRISTOPHER + RAFFERTY."

mark

The petition was duly verified by affidavit.

Previous to 1861, the law regulating the change of venue in criminal cases stood thus:

"When any defendant in any indictment or information in any court in this State, shall fear that he will not receive a fair and impartial trial in the court in which the trial is pending, on account that the judge is prejudiced, or that the minds of the inhabitants of the county wherein the trial is pending are prejudiced against him, such party may apply to the court in term time, or the judge thereof in vacation, for a change of venue, by petition setting forth the cause of such application, verified by affidavit, reasonable previous notice being given," etc., "and the court or judge shall award a change of venue to the next nearest county where the causes complained of do not exist."

On the 21st of February, 1861, the general assembly passed the following act, amendatory of that law:

"When any defendants in any indictment or information for any offense not punishable with death in any court in this State, shall apply to said court for a change of venue, under the provisions of section 5, chapter 106 of the Revised Statutes, such defendants shall, in addition to the causes in said section expressed, set forth in his petition the grounds of his belief

or knowledge that the judge of said court or the minds of the inhabitants of the county in which the action is pending are prejudiced against him, and the facts which induced him to believe that such prejudice, either on the part of said judge or the inhabitants of said county, does exist.

"SEC. 2. Such petition shall be verified by affidavit of the defendant, as now required by law; and said court shall hear said petition, and shall have power to grant or deny the same.

"SEC. 3. It shall be lawful for the State's Attorney, on behalf of the people, to deny the facts stated in the petition and support the same by counter affidavit.

"SEC. 4. No court shall grant any change of venue in a criminal cause where the facts set forth in the petition are disproved by counter affidavits on the part of the people, nor unless said court shall be satisfied that said petition is true, in substance and in fact, and that there is reasonable grounds to fear that said defendant can not receive a fair and impartial trial in the court where the same is pending."

No question is made as to the regularity of the application in this case, but the position is taken, on the part of the people, that the court below was, notwithstanding, authorized to deny the petition, under the last clause of the fourth section of said amendatory act.

The former law was peremptory that the court "shall award a change of venue." The court had no power to deny it, where the application was in due form. Such power was first given by the second section of the amendatory act of 1861; and it is given there clearly in the cases named in the first section—cases only where the offense is "not punishable with death." We regard the fourth section as but regulating the exercise of the power given by the second section.

The first clause of the fourth section—"no court shall grant any change of venue in a criminal cause where the facts set forth in the petition are disproved by counter affidavits on

the part of the people"—manifestly has respect to cases where
the offense is not punishable with death, as it is only in such
cases that the facts which induce the belief of the prejudice
against the defendant must be set forth in the petition, and
where counter affidavits are admissible; and the last clause
of the fourth section, as we read it, relates to such cases only,
requiring that, even if the said facts are not so disproved, the
court shall not then grant the change of venue, unless it shall
be satisfied that the petition is true in substance and in fact,
and that there are reasonable grounds for the defendant's
fear.

If that clause be understood as embracing capital cases, as
the defendant only swears in such cases to his fear that he
will not receive a fair trial, without setting forth its grounds
or the facts which induce it, where would be the court's
means of satisfying itself whether the petition is true in sub-
stance and in fact, and whether there are reasonable grounds
for the defendant's fear?

We think the exception of capital cases, contained in the
first section of this amendatory act, must be taken as carried
into the fourth section; that the words, "in a criminal cause,"
in the latter section, mean such a criminal cause as is provided
for in the first section, namely: one where the offense is not
punishable with death—and we must declare, as the true con-
struction of this amendatory act of 1861, as derived from
comparing together its different sections, that it relates solely
to offenses which are not punishable with death; and that as
to capital cases, the old law as to the change of venue in
criminal cases remains unchanged.

The old law had come to be notoriously perverted from its
true purpose. A change of venue was resorted to, as an
ordinary mode of defense, to secure an acquittal through the
loss of testimony, which would not infrequently occur from
the delay caused by a change of venue and the enhanced
difficulty of getting the attendance of witnesses in a foreign
county. The legislature, doubtless, deemed that it would

sufficiently meet the mischief to apply the remedy in cases where the offense was not punishable with death, considering that in capital cases, which were comparatively rare, and where was involved the grave result of the taking of human life, it would be better to bear the ills of the old law than to take from a defendant the legal benefit which he enjoyed under that law.

It was error to refuse the change of venue.

As this must cause a reversal, it becomes unnecessary, as regards the present decision, to consider the other errors assigned, among which are that the prisoner was not furnished, previous to his arraignment, with a true copy of the indictment, nor with a list of the jurors, and that the jury was not properly selected.

There is one, however, we will notice, as the same question may arise on another trial.

There was an offer of testimony on the part of the defendant, on the trial, which was refused, that about four hours before the time of the homicide, he was grossly intoxicated; that about an hour and a half previous to said time, he was intoxicated in a less degree, and that he was intoxicated at the time of the homicide.

It is a well settled rule of the common law that voluntary drunkenness is no excuse for crime, and the wisdom of the rule has received legislative recognition by its enactment into our criminal code as statutory law.

Sir MATTHEW HALE, in his "History of the Pleas of the Crown," thus declares the doctrine: "The third kind of *dementia*," he says, "is that which is *dementia affectata*, namely: drunkenness. This vice doth deprive men of the use of reason, and puts many men into a perfect, but temporary phrenzy;   \*   \*   \*   but by the laws of England such a person shall have no privilege by his voluntarily contracted madness, but shall have the same judgment as if he were in his right senses."

He states as an exception to the rule, where indulgence in habits of intemperance has produced permanent mental disease, which he calls "fixed phrenzy." 1 Hale, 32.

The crime of murder can not be reduced to manslaughter by showing that the perpetrator was drunk, when the same offense, if committed by a sober man, would be murder. *The People* v. *Rogers*, 18 N. Y. 27; *The Commonwealth* v. *Hawkins*, 3 Gray, 466; and see *McIntyre* v. *The People*, 38 Ill. 520.

Where, without intoxication, the law would impute to the act a criminal intent, as in the case of wanton killing without provocation, drunkenness is not available to disprove such intent.

In Pennsylvania, Tennessee and some other States, the crime of murder is classified by statute into two degrees. Where the killing is "wilful, deliberate, malicious and premeditated," it is murder in the first degree. All other kinds of murder are declared to be murder in the second degree. Where this distinction prevails, it has been held that the influence of intoxication may be considered by the jury in determining whether the crime is murder in the first or second degree. As there are no degrees of murder under our law, decisions made under such statutes are inapplicable here.

And it has been held that, where what the law deems sufficient provocation has been given, which, if acted upon instantly, would mitigate the offense of a sober man, and the question in the case of a drunken man is, whether that provocation was in truth acted upon, evidence of intoxication may be considered in deciding that question; because the question is, in such cases, whether the fatal act is to be attributed to the passion of anger excited by the previous provocation; and that passion, as is said, is more easily excitable in a person when in a state of intoxication than when he is sober. *The State* v. *McCarts*, 1 Speers (S. Car.), 384; *Rex* v. *Thomas*, 7 Carr. and Payne, 817.

The record does not present a case of such a character.

Yet, so far as the offer went to prove that the prisoner was intoxicated at the time of the commission of the homicide, the majority of the court are of opinion the evidence should have been received, as showing the condition of the defendant at the time, and in that respect constituting part of the *res gestæ.*

Under our statute, it belongs to the jury to fix the punishment for murder, which may be either death by hanging or imprisonment in the penitentiary for the term of life, or for a term of not less than fourteen years.

It is important that all the concomitant circumstances of the act committed—the condition of the prisoner at the time, among the rest, as tending to give character to his conduct—so far as they may be regarded as a part of the *res gestæ,* should be laid before the jury, that as near as may be, they may see the crime as it is—the precise complexion of it—in order that they may intelligently graduate the punishment.

But proof of intoxication at the other times embraced in the offer, we think, was properly rejected.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*