TREVIOR SLATTERY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. ABORTION—*statute relating to, construed.* The section of the criminal code in the Revised Statutes of 1874, which provides that whoever, by means of any instrument, medicine, drug, *or other means whatever*,

causes any woman pregnant with child, to abort or miscarry, or attempts, etc., shall be punished in the penitentiary, etc., was evidently aimed at professional abortionists, and at those who, with the intent and design of producing abortion, shall use any means to that end, no matter what those means may be, but not at those who, with no such purpose in view, should, by a violent act, unfortunately produce such a result. The intent to produce an abortion must exist when the means are used.

2. SAME—*violence without intent to produce.* Where a party assaulted and beat his wife, then about three months in pregnancy, and who had miscarried on several times before, and shortly after such beating she miscarried, and the proof failed to show that the miscarriage was the result of the beating, or that the husband had the least idea such would be the result, or that he desired or intended such a result, it was *held*, that a conviction of the husband for producing the abortion could not be sustained.

3. CRIMINAL LAW—*intent necessary to crime.* A criminal offense consists in a violation of a public law, in the commission of which there must be a union or joint operation of act and intention, or criminal negligence, and the intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused.

4. ADMISSIONS—*by party's silence.* Where a defendant, whose wife had left him and gone to her father, got a neighbor to go with him to see his wife, on his promise to keep his temper and be upon his good behavior, and, while at his wife's father's house, the father stated to him many acts of violence and unkindness to his wife, which he did not deny, and this was claimed, on his trial for producing an abortion on his wife, as an admission of the facts stated by the father, it was *held* not an admission of the truth of such facts, as the defendant was not in a position to deny them, owing to his promise to be on his good behavior.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an indictment against Trevior Slattery, for producing the miscarriage of his wife, Celestia Slattery, by beating her, etc. The defendant was convicted, and sentenced to three years' imprisonment in the penitentiary.

Mr. HENRY W. DRAPER, and Mr. GEO. EDMUNDS, Jr., for the plaintiff in error.

Mr. B. F. PETERSON, State's Attorney, and Mr. JAS. K. EDSALL, Attorney General, for the People.

Mr. Justice Breese delivered the opinion of the Court:

Plaintiff in error was indicted, at the June term, 1874, of the Hancock circuit court, for feloniously, unlawfully and maliciously beating, striking, kicking, pinching and crushing one Celestia Slattery, a pregnant woman, with intent unlawfully, feloniously and maliciously to cause her to miscarry, and by means whereof she did miscarry.

The jury found the defendant guilty, and fixed his imprisonment in the penitentiary at three years. A motion for a new trial was denied, and judgment rendered on the verdict.

The record is brought here by writ of error, and various errors assigned. Those which are deemed important will be noticed.

The section of the statute under which the indictment was found is as follows: "Whoever, by means of any instrument, medicine, drug, or other means whatever, causes any woman pregnant with child to abort or miscarry, or attempts to procure an abortion or miscarriage, etc., shall be imprisoned in the penitentiary not less than one year nor more than ten years." Rev. 1874, p. 352.

This statute is evidently aimed at professional abortionists, and at those who, with the intent and design of producing abortion, shall use any means to that end, no matter what those means may be, but not at those who, with no such purpose in view, should, by a violent act, unfortunately produce such a result. The intent to produce an abortion must exist when the means are used. That is the charge in the indictment. It is there charged the prisoner did feloniously and maliciously beat this pregnant woman, with intent unlawfully, feloniously, etc., to cause her to miscarry.

The party alleged to have been so beaten is the wife of the prisoner, who, by his own confession, had not treated her in the kindest manner, but there is not a particle of proof in the record going to show that her miscarriage was caused by any violence he at any time used towards her, or that he had the

least idea such would be the result, or that he desired or intended such a result.

A felonious and malicious intent to cause a miscarriage being charged in the indictment, circumstances sufficient to satisfy the jury of the intent, should be shown. A criminal offense consists in a violation of a public law, in the commission of which there must be a union or joint operation of act and intention, or criminal negligence, and the intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused.

The only marks upon the person of Mrs. Slattery were a discoloration about a finger's length of one thigh, a mark on one of her arms, and a slight discoloration at one spot on her face, but how these were produced no witness testified. It was in proof she was about three months gone in pregnancy, and had three or four miscarriages previously, and but a short time before this last one she had rode some miles in a lumber wagon to a dancing party, where she danced all night and into the morning, and rode home in the same conveyance.

One Taylor, claiming to be a doctor, gave it as his opinion that these marks appeared to have been made three or four days previous to the miscarriage, and, in his opinion, produced it; whilst Drs. Thompson and Carlton testify, the bruises, as described by Taylor, would not cause miscarriage to a healthy woman. They further testify, after three or four miscarriages it becomes habitual, and the chances are against the woman carrying a child the full time; and they further say that, with such a woman, lifting heavy weight, any hard work, fast walking, riding in a lumber wagon, dancing, or anything of that kind, would be liable to induce a miscarriage.

There is no question that the great preponderance of the evidence sustains the position taken by the prisoner's counsel, that miscarriage had become habitual with her, and the

chances were all against her carrying this fœtus the full time. We have said there was no evidence to show this miscarriage of the prisoner's wife was caused by any act of violence of his toward her. The weight of the testimony is the other way.

It is argued by the counsel for the people, it sufficiently appears from the testimony of her father, Joseph Larrimore. Neither he, nor Mrs. Larrimore, the mother, testify to any act of violence of their own knowledge, but claim that at Larrimore's house, where Mrs. Slattery then was, after her miscarriage, at an interview there held by the prisoner, at which was present his wife, her father and mother, a Mr. Bliss and a Mrs. Davis, the prisoner admitted many acts of violence which Larrimore specified, by not denying the accusations. No time was specified when these acts were done—whether years before or quite recently; and the prisoner was not in a position to deny, for he had promised Bliss, if he would go with him and be present at the interview, he would keep his temper—would be on his good behavior. He felt pledged to make no denial of any statement Larrimore should make, but to keep his temper under strict control, and let his father-in-law say what he pleased. At this interview not one word was said by Mr. or Mrs. Larrimore, or by Mrs. Slattery, or by anybody else, that her miscarriage had been caused by the prisoner's violence toward her. It is strange, indeed, if such was the fact, the miscarriage so recent, and all the prisoner's enormities narrated with much apparent *gusto* by Larrimore, that he should not have charged this miscarriage as having been produced by the prisoner's violence. There is nothing of it in the proof.

We fail to find in this record anything connecting the prisoner with the crime charged, as it is defined in the statute book.

The judgment will be reversed, and the cause remanded, that a new trial may be had.

*Judgment reversed.*