(No. 15666.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JERRY O'CONNOR *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1923.*

1. CRIMINAL LAW—*what constitutes robbery.* · Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another, and the owner's power to retain his property must be overcome by actual violence or by fear.

2. SAME—*what constitutes larceny.* Larceny is the felonious stealing, taking and carrying away of the personal goods of another, and includes private stealing from the person.

3. SAME—*when taking a pocket-book from a drunken man is not robbery.* The taking of a pocket-book from the person of a drunken man may constitute larceny, but it does not constitute robbery where the evidence shows that the victim was so intoxicated that he did not know whether he was knocked down by force or fell down because of his condition, and where there is no positive evidence that force or intimidation was used but only that the pocket-book was taken and subsequently thrown away by the defendants.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding.

FRANK A. McDONNELL, (S. B. McDONNELL, JR., and THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error were indicted by the grand jury of Cook county in November, 1922, for the crime of robbing Joseph Gorlikowski, and after trial before a jury were found guilty and sentenced to the Joliet penitentiary. The case is brought here by writ of error, and the sole argument

urged in the briefs of plaintiffs in error is that the evidence does not show that the crime of robbery, as that term is used in the law, was committed.

The prosecuting witness, Gorlikowski, testified that he was in the neighborhood of Elston avenue and Wade street, in Chicago, about 3:30 in the afternoon of September 25, 1922; that he had a pocket-book in his hand containing about eight dollars in money and various trinkets; that he sat down with his back against the fence and his eyes closed and somebody grabbed the pocket-book out of his hand; that he tried to open his eyes and could not, and when he did open them he saw one of the plaintiffs in error standing by him; that just at the time he felt the pocket-book taken out of his hand he heard someone say, "Don't holler or we will kill you," but that it "was not a close voice; that was a very far distant voice; must have come from a far distance." On cross-examination he testified that at the time in question he was out of work and looking for a job, being accompanied by his brother; that he had a few drinks that afternoon, being the first in over eight years; that after leaving his brother he sat down against a fence on Elston avenue and took the pocket-book out of his pocket, his eyes being closed, and just at that time the pocket-book was grabbed from his hands. He testified positively that he did not fall on the street, and apparently did not know anything about being struck or pushed by an automobile, and said that when he testified at the preliminary examination of plaintiffs in error in the police court he did not mention the voice telling him not to holler or he would be killed.

Victor Lewis, an automobile mechanic working for the Ward Baking Company, testified that he was standing in front of the company's bakery on Elston avenue near Wade street, waiting for a truck to come; that he first saw Gorlikowski on the east side of Elston avenue crossing to the west side, and that an automobile came from the north containing the two plaintiffs in error and another young man

and that Gorlikowski was pushed down by the automobile; that he fell over to the curb, and that two of the men got out of the car and rolled him over on top of the curb and then picked him up and sat him in the parkway between the curb and the sidewalk and looked in his back pockets and felt him all over; that when they saw a policeman coming the three young men jumped into the car and started to drive off, and witness saw the pocket-book thrown from the car to the street and saw a motorman pick it up. Apparently the witness was only about fifty feet from most of the occurrences in question.

James P. Coleman testified that he was motorman on the Elston avenue car line; that he was driving his car north and saw a policeman with three men lined up against the wall; that an automobile was standing across the street; that he stopped the street car and afterwards noticed the pocket-book lying in the street with the contents scattered near by, which he gathered together and gave to the policeman. The pocket-book and contents were introduced in evidence and identified by the prosecuting witness as his.

Walter W. Payne, a police officer, testified that while on his beat in that locality he came around the corner south of where the occurrences took place and noticed the two plaintiffs in error and one Hanson around Gorlikowski, and that defendant Larson jumped into the car and started it and the other two also jumped in; that witness drew his revolver and made them stop and lined them up against the wall to be searched for weapons; that Gorlikowski was complaining of his loss and the motorman came over with the pocket-book; that he placed the men in the car and had Larson drive to the police station, but on the way Hanson, who was in the back seat, escaped, and the witness could not leave his other two prisoners to pursue him.

Plaintiff in error O'Connor took the stand in his own behalf and testified that while he and Larson and Hanson were driving in the car Gorlikowski stumbled on the street

right by the wheel and fell, and witness and the others picked him up and placed him out of the street but did not take anything from him; that Gorlikowski was very much intoxicated and could not stand without assistance. Witness further testified that Hanson, the third man in the car, was a stranger to him, who had been given a ride.

No argument is raised in the briefs to the effect that the testimony does not show that plaintiffs in error took the pocket-book and contents from Gorlikowski, the question being whether under the circumstances shown in the record the taking constituted robbery or larceny from the person. Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation. (Crim. Code, par. 501.) Larceny is the felonious stealing, taking and carrying away of the personal goods of another, and the statute provides that private stealing from the person of another shall be deemed larceny. (Crim. Code, par. 387.) Practically the only testimony in the record to the effect that force or intimidation was used is that of the complaining witness to the effect that one of the plaintiffs in error grabbed the pocket-book from his hand and that he heard a voice coming from a far distance telling him not to holler or they would kill him. It is apparent from Gorlikowski's own testimony that he was so much intoxicated that he did not know he had been struck by an automobile or fell in the street beside one. He was also so intoxicated that according to his testimony he was sitting on the sidewalk on a somewhat busy street and taking out his pocket-book to examine it, with his eyes closed. It would be a very unusual incident for robbers who wished to have their proceedings unnoticed by bystanders to cry out in a voice loud enough to be heard from a far distance, in broad daylight, with street cars, automobiles and pedestrians passing, that their victim must not make any noise or they would kill him. We are of the opinion that the testimony of Gorlikowski, while

probably given in good faith at the time of the trial, represented only his vague remembrance of impressions received while strongly under the influence of alcoholic liquor. The testimony of Lewis, who saw the transaction from a close distance and was apparently a disinterested bystander, was to the effect that Gorlikowski fell in the street or was struck by the automobile, and that plaintiffs in error went through his pockets and afterward threw the pocket-book from the automobile. He did not testify that he heard a voice in the far distance stating that they would kill Gorlikowski if he made an outcry. We do not think the evidence shows with sufficient certainty either that force or intimidation was used, as those terms are understood by the statute as construed by this court, in taking the pocket-book from the complaining witness.

Of the numerous decisions of this court cited in the briefs concerning the distinction between robbery and larceny from the person, two, which had to do with the taking of property from intoxicated men, are *Hall* v. *People*, 171 Ill. 540, and *People* v. *Jones*, 290 id. 603. In the *Hall case* it is stated: "The only difference between private stealing from the person of another, and robbery, lies in the force or intimidation used. In regard to the force or violence with which the goods were taken the principle is this: that the power of the owner to retain the possession of his goods was overcome by the robber either by actual violence physically applied or by putting him in such fear as to overpower his will, as if a thing be feloniously taken from the person of another with such violence as to occasion a substantial corporal injury or if it be obtained by a violent struggle with the possessor; but where it appeared that the article was taken without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand of the wearer,—rather by sleight of hand and adroitness than by open violence and without any struggle on his part,—it is merely lar-

ceny from the person. (3 Greenleaf on Evidence, sec. 229.) It may be different if the article is so attached to the person or clothing as to create resistance and violence is used to overcome it. * * * If one should rifle the pockets of a sleeping or an unconscious person, even to the unbuttoning of clothes and turning out of pockets, such offense would not be robbery.—*Brennon* v. *State,* 25 Ind. 403." In the *Jones case* the opinion of the court, after citing the *Hall case,* states: "In the latter case Hall unbuttoned his victim's vest and took the pocket-book from his inside vest pocket, using no more force than the mere physical effort of taking the pocket-book from the victim's pocket and transferring it to his own, and the court said that if that is robbery then no practical distinction between that crime and larceny from the person exists. The owner's power to retain his property must be overcome by the use of actual violence or by fear. (*People* v. *Ryan,* 239 Ill. 410.) In *People* v. *Campbell,* 234 Ill. 391, it was held that the force required to tear a diamond stud from the wearer's shirt front, to which it was attached by a spiral pin, and the struggle to retain the pin, constituted the taking robbery. In the present case the incriminating evidence tended to show only a stealthy taking of the pocket-book from Kehl's pocket and transferring of it to Jones' pocket. The evidence excluded any attempt to use violence. There was no evidence of a struggle to retain possession of the pocket-book. * * * The actions of the plaintiff in error as testified to were those of a pick-pocket and not of a highwayman." See, also, for a discussion of this question, *Klein* v. *People,* 113 Ill. 596; *Burke* v. *People,* 148 id. 70; *People* v. *Campbell, supra; People* v. *Ryan, supra; People* v. *Goldberg,* 302 Ill. 559.

Under the evidence plaintiffs in error were not guilty of the crime of robbery, and the judgment must be reversed.

*Judgment reversed.*