**The People of the State of Illinois, Defendant in Error, v. Robert H. Bray, Plaintiff in Error.**

**Gen. No. 49,756.**

First District, First Division.

October 19, 1964.

Kenneth J. Fisch, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Robert H. Bray, was convicted of armed robbery, and after a hearing for the purpose of considering mitigation or aggravation the defendant was sentenced to the penitentiary for a term of not less than ten nor more than twenty years. The defendant filed this writ of error in the Supreme Court and the case was assigned to this court.

The defendant's theory in this appeal is that the evidence presented at trial tends to show that the defendant was insane at the time the act charged against him was committed and that although no specific defense of insanity was raised at the trial, the

evidence supported such a defense and the trial judge erred in not ordering an examination or hearing for the defendant on its own motion and in not finding him innocent of the charge because of the defense.

We summarize the evidence. At about 7:50 on the evening of February 26, 1962, the defendant stopped Cora Hamburger on a Chicago street, announced "this is a stickup," struck her repeatedly on the head with a hard object inflicting wounds requiring hospital treatment, took her purse containing $52 and other personal belongings and fled. Later that evening, at about 9:50, the defendant accosted James Reck in an alley behind the building located at the same address where he had robbed Cora Hamburger. When the defendant said "this is a holdup," Reck noticed the defendant's gun, grabbed it and started striking the defendant with a spade, knocking him down and wounding him in the head. The defendant managed to escape leaving the gun which Reck found to be empty. Reck pursued and subdued him. After begging for mercy and being allowed to sit up, defendant made another escape. Reck finally stopped the defendant a block from their first encounter, at which time police officers, noticing the men scuffling in the street, arrested the defendant, found $143 in his wallet and received the gun from Reck.

At the trial, defendant was represented by his own attorney and though he was advised of his right to it, he waived a trial by jury. From their testimony it appears that while Reck and the arresting officer, Lawrence Ide, detected the odor of alcohol on the defendant's breath, Ide, who had been on the police force for one year and had occasion to make arrests for offenses involving intoxication, could not say, from his observation of the defendant for a period of 45 minutes to an hour after the arrest, that the defendant was intoxicated. Cora Hamburger testified that

she detected no alcohol on defendant's breath. The defendant testified that he had been in three or four taverns on the morning of the day in question and had started drinking about 9:00 a. m. He testified, however, that he could remember nothing after leaving one of the taverns sometime during the daylight hours until he awoke in the hospital to which the police had taken him after the arrest.

The defendant, whose age was stipulated to be 44 years, testified further that he was an alcoholic and had been one since his teens; that on the day in question he was living at an alcoholics' rehabilitation center operated by Alcoholics Anonymous and that he had "experienced these blackouts before." The defendant denied having a gun on his person on the morning involved and stated that on that morning he was carrying only sixty or seventy dollars.

After the court rendered its verdict, the defendant's attorney asked the court to take into consideration, in mitigation of punishment, the fact of the defendant's alcoholism. The court found that though the defendant was an alcoholic, he was not intoxicated at the time of the crime.

█ The Supreme Court of this state, in People v. Cochran, 313 Ill 508, 145 NE 207, has held that insanity caused by intoxication is a good defense to a criminal charge. That case involved a murder and the issue was raised on the claim of erroneous instructions. The court said:

> Long continued habits of intemperance which produce permanent mental diseases amounting to insanity, which so weaken and impair the mind that one committing an offense has not mind enough at the time to know right from wrong and has not sufficient mind and power of will to refrain from doing the act, relieve a person from responsibility under the law. Insanity of

this sort and thus produced is the same, in law, as insanity arising from other causes. (313 Ill at 518).

█ However, it is clear that in order to obtain the protection of the defense of insanity at the time of the criminal act, the defense must be raised at the time of trial or otherwise it is waived. Brown v. People, 8 Ill2d 540, 134 NE2d 760; Glenn v. People, 9 Ill2d 335, 137 NE2d 336; People v. Milligan, 28 Ill2d 203, 190 NE2d 753. People v. Burson, 11 Ill2d 360, 143 NE2d 239, on which the defendant relies is inapplicable to the case at bar because that case involved a question of insanity at the time of trial, not at the time of commission of the criminal act. The Supreme Court in the Brown case cited above has put the distinction in these words:

> Throughout this opinion we have been concerned solely with the question of the sanity of the accused at the time of trial although it was also assigned as a constitutional question that the court failed to conduct a hearing to determine the sanity of the accused at the time of the crime. The defense of insanity at the time of the crime, like any other defense, must be raised at the time of the trial and submitted to the jury. . . . It appears from the testimony of the attorney for the defendant that the grounds for doubting the insanity of the defendant did not appear until the trial was in progress. The defense of insanity at the time of the crime having not been raised, it was waived. (8 Ill2d at 546).

In the Brown case, no indication of a possible insanity defense was made until the second day of trial at which time the defendant's attorney unsuccessfully moved for adjournment in order to conduct a psychiatric examination of the defendant. After verdict and

before sentence, the defendant unsuccessfully renewed his motion for a psychiatric examination. Surely, if the defense was not adequately raised in Brown on the facts given, we cannot hold that here the defense was properly raised where no motions whatever were made with respect to insanity.

■ ■ Furthermore we are not persuaded that the trial judge's determination that there was no credible evidence to support the defense of insanity at the time of the crime should be overturned. The presumption of sanity can be overcome by evidence tending to prove insanity which evidence is sufficient to create a reasonable doubt of sanity at the time of the criminal act. People v. Patlak, 363 Ill 40, 1 NE 2d 228. A determination in this case whether there was evidence of a long continued intemperance producing permanent mental disease, as required by the Cochran case, resolves itself into a question of the credibility of the defendant on whose testimony alone the claim of the defense rests. Where a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded is committed to the trial judge. People v. West, 15 Ill2d 171, 154 NE2d 286; People v. Holt, 398 Ill 606, 76 NE2d 474.

The conclusion of the trial judge that the defendant was not intoxicated at the time of the armed robbery was fully justified by the evidence and under the circumstances we find no basis for substituting our judgment for his.

■ ■ The defendant cannot rely on the defense of voluntary intoxication at the time of the crime. People v. Lion, 10 Ill2d 208, 139 NE2d 757. Our courts have consistently held that this defense may be used only in cases in which the crime involves a specific intent or malice. People v. Bartz, 342 Ill 56, 173 NE 779; People v. Cochran, 313 Ill 508, 145

389

NE 207. No such specific intent or malice is required for armed robbery. Ill Rev Stats (1963), sections 18–1 and 18–2; People v. Emerling, 341 Ill 424, 173 NE 474.

Finally we hold that the trial judge was not in error in failing to provide a hearing on his own motion in order to determine the defendant's sanity at the time of trial. Such a hearing is required if there is a bona fide doubt of the defendant's sanity at the time of trial. When it is evident that the defendant is neither capable of cooperating with his counsel or giving him the assistance necessary for a proper defense, a duty devolves upon the court to then cause a sanity hearing to be held as provided by law. People v. Burson, 11 Ill2d 360, 143 NE2d 239. There must, however, be some evidence of insanity; reliance on the defense does not of itself create a bona fide doubt of sanity. People v. Bender, 27 Ill 2d 173, 188 NE2d 682. Here there is no such evidence. The defendant's conduct while giving his testimony on both direct and cross-examination appears to be rational. His answers were direct and to the point. He showed that he was capable of giving his counsel the necessary assistance for a defense and he appeared to give full cooperation. The judgment of the trial court is therefore affirmed.

Judgment affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.