(No. 48831.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JOSEPH WHITE, Appellant.

*Opinion filed June 1, 1977.*

DOOLEY, J., specially concurring.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, James O'Reagan, and John Thomas Moran, Assistant Public Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Larry L. Thompson, and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Cook County, defendant, Joseph White, was found guilty of armed robbery and sentenced to the penitentiary. The appellate court affirmed (40 Ill. App. 3d 455), and we allowed

defendant's petition for leave to appeal.

Defendant's only defense to the armed robbery charge was that he was so intoxicated that he could not form the requisite intent to commit the offense. The circuit court admitted evidence of his intoxication and found that he was intoxicated at the time the offense was committed, but held that his voluntary intoxication was no defense to the crime. The appellate court, in affirming, said: "[I] t long has been held in Illinois that intent is not an element of the crime of robbery. [Citations.] Since intent is not a requisite element of the offense, Illinois courts have specifically held that voluntary intoxication is not a defense to robbery. [Citations.] " 40 Ill. App. 3d 455, 457.

Defendant contends that the appellate court erred in holding that intent is not an element of the offense of robbery and that voluntary intoxication cannot be a defense to armed robbery. The People contend that "voluntary intoxication is not a defense to armed robbery, a general intent offense which requires neither the charge nor the proof of intent."

An examination of the authorities cited by the parties shows, unfortunately, that there are cases decided prior to the enactment of the Criminal Code of 1961 which appear to hold both that specific intent was, and that it was not, an element of the crime of robbery. A careful examination of the cases and the relevant statutes will show how this confusion developed.

Article 18 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—1 *et seq.*) provides:

> "Sec. 18—1. Robbery. (a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.
>
> * * *
>
> Sec. 18—2. Armed Robbery. (a) A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon."

The Committee Comments as to section 18—1 state

that "This section codifies the law in Illinois on robbery and retains the same penalty. No change is intended. \*\*\* No intent element is stated as the taking by force or threat of force is the gist of the offense and no intent need be charged. (See *People v. Emerling,* 341 Ill. 424, 173 N.E. 474 (1930).)" (Ill. Ann. Stat., ch. 38, par. 18—1, Committee Comments, at 213) (Smith-Hurd 1970).) Concerning section 18—2, the Committee Comments state that "No change is made in this offense except as is involved in robbery as defined in subsection (a)." Committee Comments, at 256.

As originally enacted (Rev. Laws 1827, at 134, sec. 61) and until the effective date of the Criminal Code of 1961 (see Ill. Rev. Stat. 1961, ch. 38, par. 501), section 246 of the prior criminal code defined robbery as "the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation."

The earlier decisions of this court held that a necessary element of both the crimes of robbery and larceny was the specific intent to steal and that the only distinction between larceny from the person and robbery was the force or intimidation required to constitute robbery. In *Bartholomew v. People,* 104 Ill. 601, where the defense was intoxication, it was held that to constitute the crime of larceny the specific intent to steal must accompany the act of taking the property. In *Burke v. People,* 148 Ill. 70, the defendant, who without the victim's immediate knowledge took a pocketbook containing money from his inside vest pocket, was convicted of robbery. The court stated that the "gist of the offense [robbery] is \*\*\* force or intimidation." (148 Ill. 70, 74.) In the absence of force or intimidation the crime would have been larceny, but the court found that there was sufficient evidence of force to constitute robbery. The factual situation in *Hall v. People,* 171 Ill. 540, was very similar to that in *Burke,* except that the victim was drunk,

and the defendant unbuttoned his vest and took the pocketbook from his inside vest pocket. The court stated:

> "As distinguished from larceny from the person, the gist of the offense is the force or intimidation, and the taking from the person, against his will, a thing of value belonging to the person assaulted. (*Burke v. People*, 148 Ill. 70.) The only difference between private stealing from the person of another, and robbery, lies in the force or intimidation used. \*\*\*
>
> \*\*\* We are disposed to agree with the views of counsel for plaintiff in error that the evidence showed no more force than the mere physical effort of taking the pocket-book from Hubbell's person and transferring it to Hall. If that is robbery, then no practical distinction between that crime and larceny from the person exists. The two crimes approach each other so closely that cases may arise where it may be doubtful upon which side of the line they should fall."

(171 Ill. 540, 542-44.)

See also *Steward v. People,* 224 Ill. 434; *People v. Campbell,* 234 Ill. 391; *People v. Ryan,* 239 Ill. 410; *People v. Jones,* 290 Ill. 603; *People v. O'Connor,* 310 Ill. 403; *People v. Williams,* 23 Ill. 2d 295.

In *Garrity v. People,* 70 Ill. 83, and *People v. McLaughlin,* 337 Ill. 259, the defendants were charged with assault with intent to rob. Although in each case the evidence showed that the defendant physically attacked the victim, there was no evidence of intent to steal anything of value, and the convictions were reversed. In *People v. Ware,* 23 Ill. 2d 59, the defendant, an off-duty policeman armed with a pistol, took a cigarette lighter from the complaining witness during an investigation and inadvertently failed to return it. In reversing the conviction the court said:

> "The crime of robbery is defined by the

Criminal Code as 'the *felonious* and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation.' (Ill. Rev. Stat. 1959, chap. 38, par. 501, emphasis supplied.) The word 'felonious' has at times been defined as meaning 'malicious,' 'malignant,' or 'wrongful' and when used in a statute has been said to be synonymous with 'criminal.' (See: 36A C.J.S., pp. 254-255.) This court has said that an act done feloniously is done with the deliberate purpose of committing a crime, (*People v. Falkovitch,* 280 Ill. 321, 324,) and that as employed in our criminal laws the term felonious has its 'ordinary meaning' of manifesting a criminal purpose. (*People v. Connors,* 301 Ill. 112, 116.) As the term 'felonious' is used in the robbery statute, therefore, it would appear to be a necessary element of the crime that the taking was with a criminal purpose. *Cf. People v. Erlandson,* 360 Ill. 214." 23 Ill. 2d 59, 62.

The confusion concerning intent as an element of robbery appears to have arisen as the result of an amendment to the robbery statute. Following its amendment in 1874, until 1919, the robbery statute provided:

> "Robbery is the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation. Every person guilty of robbery shall be imprisoned in the penitentiary not less than one year nor more than fourteen years; or if he is armed with a dangerous weapon, with intent, if resisted, to kill or maim such person, or being so armed, he wounds or strikes him, or if he has any confederate present so armed, to aid or abet him, he may be imprisoned for any term of years or for life." Rev. Stat. 1874, ch. 38, par. 246.

In *McKevitt v. People*, 208 Ill. 460, 471, the defendant was charged with armed robbery in the language of the statute. The jury found him "guilty of robbery in manner

and form as charged in the indictment." The court held that the defendant was guilty of robbery and not armed robbery because the jury had not specified in its verdict that it found, as required by the statute, that defendant was "armed with a dangerous weapon, with intent, if resisted, to kill or maim such person" or that he had a "confederate present so armed, to aid or abet him."

In 1919 the statute was amended to provide:

> "Robbery is the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation. Every person guilty of robbery shall be imprisoned in the penitentiary not less than three years nor more than twenty years; or if he is armed with a dangerous weapon, or being so armed, he wounds or strikes him, or if he has any confederate present so armed, to aid or abet him, he shall be imprisoned in the penitentiary for any term of years not less than ten years or for life." Laws of 1919, at 431.

In *People v. Hildebrand,* 307 Ill. 544, 555, the defendants were charged with robbery and the indictment alleged that "at the time and place of the commission of the crime, [they] were armed with a dangerous weapon, to-wit, a revolver. The jury found each of the plaintiffs in error guilty of robbery in manner and form as charged in the indictment." Citing *McKevitt,* the defendants argued that they were only guilty of robbery and not armed robbery because the jury had not specifically found they were armed with a dangerous weapon. In rejecting this contention the court stated:

> "It was held in that case that the verdict 'guilty in manner and form as charged in the indictment,' did not include a finding of the specific intent with which it was charged the defendant was animated while armed with the revolver. The statute under which the defendant in that case was convicted of robbery provided that if the person convicted was armed with a dangerous weapon, with intent, if resisted, to kill or maim

the victim, he should be subject to the greater penalty. In 1919 this statute was amended so as to provide that if the defendant is armed with a dangerous weapon he shall be imprisoned in the penitentiary for any term of years not less than ten or for life. (Laws of 1919, p. 427.) *No question of intent is involved. It is not required to be charged or proved.* The mere fact of committing a robbery while armed with a dangerous weapon incurs the liability to the higher punishment." (Emphasis added.) (307 Ill. 544, 555.)

As noted by the court the 1919 amendment deleted the "with intent, if resisted, to kill or maim such person" and it is clear that it was to this second specific intent that the court referred when it said "No question of intent is involved. It is not required to be charged or proved."

In *People v. Emerling,* 341 Ill. 424, the defendant was convicted of armed robbery and on appeal contended that the circuit court gave an erroneous instruction on the intent alleged in the indictment. Citing *Hildebrand,* the court stated: "In the present case no question of intent is involved. It was not required to be charged or proved." (341 Ill. 424, 428-29.) It was this case (*Emerling*) which was cited in the Committee Comments (Ill. Ann. Stat., ch. 38, par. 18–1, at 213 (Smith-Hurd 1970)) for the proposition that "Taking by force or threat of force is the gist of the offense and no intent need be charged." It is true that this court had previously made that statement, and the implication of the statement is that where there is a taking of something of value by force or intimidation from the person of another the intent is immaterial. The holding in *People v. Ware,* 23 Ill. 2d 59, however, shows this was clearly erroneous. The statement that force or intimidation is the gist of the offense of robbery first appeared in *Burke v. People,* 148 Ill. 70, and *Hall v. People,* 171 Ill. 540, and cases following those two decisions (see, *e.g., People v. Cassidy,* 394 Ill. 245, 246),

apparently for the purpose of explaining that force or intimidation was the element of the crime of robbery which distinguished it from larceny of the person. We are of the opinion that the statement in *Emerling* that intent is not an element of the crime of robbery resulted from a misreading of *Hildebrand,* and that at the time of the enactment of the Criminal Code of 1961 intent was an element of the crimes of robbery and armed robbery.

In the enactment of the Criminal Code of 1961, the General Assembly confronted the difficult problem of describing the mental states which are elements of the specific offenses. The magnitude of the task is to some extent demonstrated by the following statement from the Committee Comments:

> "Some of the words and phrases used in the former Illinois statutes to describe mental state were: wilful, wilful and unnecessary, intentional, evil intent, with intent, for the purpose of, with a view to, knowing, designed, deliberate, wicked, felonious, malicious, malice aforethought, rude and licentious, abandoned and (or) malignant heart, fraudulent, false, corrupt, officious, without good cause, threatening manner, permitting, fraudulently neglecting, wanton, reckless, careless, unnecessarily failing, negligent, without due caution or circumspection. By far the most commonly used of these terms were: wilfully, with intent, and knowing; and rather commonly used were: for the purpose, fraudulent, malicious, false, and felonious. On the other hand, numerous provisions defining offenses had no words or phrases indicating a required mental state: in some of these, the courts had held that mental state was not a requirement (the 'absolute-liability' offense, discussed below); in others, the court found it necessary to imply a mental-state element. (E.g. 'intent' in causing abortion (sec. 3): Slattery v. People, 76 Ill. 217 (1875); People v. Gleitsmann, 384 Ill. 303, 51 N.E.2d 261 (1943); or in failing or refusing to pay over money collected by an attorney, etc. (sec. 213): People v. Ervin, 342 Ill. 421, 174 N.E. 529 (1930); or in advocating overthrow of government (sec. 558): People v. Lloyd, 304 Ill. 23 at 82, 95, and 104, 136 N.E. 505 (1922); 'purpose' in compounding a felony (sec.

135): Rieman v. Morrison, 264 Ill. 279, 106 N.E. 215 (1914), and Austin v. Feron, 298 Ill. App. 528, 7 N.E.2d 476 (1937); 'knowledge' of concealed firearm (sec. 155): People v. Liss, 406 Ill. 419, 94 N.E.2d 320 (1950), or of false address given in procuring a narcotic drug (sec. 129.20(1)(d)): People v. Slade, 319 Ill. App. 114, 48 N.E.2d 795 (1943), or of particular conditions which defendant, as a public official, was required to correct (sec. 449): People v. Flynn, 375 Ill. 366, 31 N.E.2d 591 (1940); 'intentional substantial failure' in palpable omission of official duty (sec. 449): People v. Hughey, 382 Ill. 136, 47 N.E.2d 77 (1943).)

In a number of other states, efforts have been made to simplify the description of mental states, by defining a small number of terms and using them uniformly throughout the criminal code, with appropriate qualifying language where necessary to describe accurately a particular offense. ***

\* \* \*

A preliminary study of the specific offenses denounced by the Illinois statutes led to a tentative conclusion that the mental element of each of those offenses might be described adequately by using one or more of a certain few terms—perhaps five or six—with uniform meaning and with appropriate qualifying language with respect to certain of the offenses." (Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments at 254-55 (Smith-Hurd 1970).)

Section 4—3 provides that, except for an offense involving absolute liability, a person is not guilty of an offense unless he acts while having one of the mental states described in sections 4—4 through 4—7 with respect to each element described by the statute defining the offense. Section 4—4 defines "intent," section 4—5 defines "knowingly," section 4—6 defines "recklessly," and section 4—7 defines "negligently."

Section 4—9 provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by

incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." (Ill. Rev. Stat. 1975, ch. 38, par. 4—9.)

In our opinion, as indicated by the Committee Comments, the General Assembly, upon enactment of sections 18—1 and 18—2 of the Criminal Code of 1961, intended no change in the existing law and there is no indication of a "legislative purpose to impose absolute liability for the conduct described." We hold that the appellate court erred and that the intent to deprive the person from whom the property is taken permanently of its use or benefit is an element of the crimes of robbery and armed robbery.

We consider next whether the inability to form the requisite intent by reason of voluntary intoxication can be a defense to the crime of armed robbery and conclude that it can.

Section 6—3 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 6—3) provides:

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

(a) Negatives the existence of a mental state which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

The Committee Comments to this section state:

"Section 6—3 deals with the problem of the effect of intoxication or drugged condition on criminal liability. The prior statutory provision in Illinois read as follows:

'Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person, for the purpose of causing the perpetration of an offense; in which case, the person so causing said drunkenness, for such malignant purpose, shall be considered principal, and suffer the same punishment as would have been inflicted on the person commit-

> ting the offense, if he had been possessed of sound reason and discretion.' (Ill. Rev. Stat. 1959, ch. 38, sec. 599.)
>
> The language, while perhaps accurate, was confusing and unenlightening. While, under Illinois law, intoxication, as such, was not a defense, yet it was clear that when drunkenness had proceeded so far as to render the defendant incapable of forming the particular *mens rea* required for the offense, the defendant was entitled to be acquitted on that charge. The same principle should apply when the condition is caused by drugs instead of alcohol. (See, e.g., People v. Bartz, 342 Ill. 56, 173 N.E. 779 (1930); People v. Jones, 263 Ill. 564, 105 N.E. 744 (1914). See also Hall, General Principles of Criminal Law, ch. 13 (1947).) The new Code makes no change in the substantive law as to intoxication but states the governing principle in a more intelligible form, and provides, additionally, for a drugged condition." Ill. Ann. Stat., ch. 38, par. 6–3, Committee Comments, at 354 (Smith-Hurd 1972).

The statute quoted in the Committee Comments was first enacted in 1827 (Rev. Laws 1827, at 125, sec. 9), prior to this court's having dealt with the question of intoxication as a criminal defense. The provision that drunkenness shall not be an excuse for crime was simply declaratory of the common law. In 4 Blackstone's Commentaries *25-26, it is stated: "[A]s to artificial, voluntarily contracted madness, by *drunkenness* or intoxication, which, depriving men of their reason, puts them in a temporary frenzy: our law looks upon this as an aggravation of the offence, rather than as an excuse for any criminal misbehaviour. *** But the law of England, considering how easy it is to counterfeit this excuse, and how weak an excuse it is (though real), will not suffer any man thus to privilege one crime by another."

In the early cases in which this court considered the subject, it was held that voluntary intoxication was neither an aggravation nor a defense to a criminal offense. (*McIntyre v. People*, 38 Ill. 514; *Rafferty v. People*, 66 Ill.

118.) In *People v. Bartholomew*, 104 Ill. 601, the defendant, whose only defense was voluntary intoxication, was convicted of larceny. Without citing or discussing *McIntyre* or *Rafferty*, the court reversed the conviction stating that to constitute larceny the intent to steal must accompany the act of taking and that the defendant was entitled to show in defense that he was intoxicated to the degree that he was incapable of entertaining the intent to steal. As indicated in the Committee Comments, this continued to be the rule (see *People v. Hare*, 25 Ill. 2d 321; *People v. Lion*, 10 Ill. 2d 208; *People v. Klemann*, 383 Ill. 236) codified in the enactment of section 6–3.

Finally we consider whether the evidence shows that defendant, by reason of intoxication, was unable to form the requisite intent to commit the offense of armed robbery. The robbery occurred at 10:15 p.m. Defendant did not testify. Eddy Two-Rivers testified that he saw defendant at a party about 3 or 4 o'clock in the afternoon, that defendant was drinking alcohol, that he was drunk, that he was "stoned out of his mind," that the alcohol affected his judgment and perception and that he was staggering around and talked in a rambling manner. This witness left the party at about 4:30 p.m. Duane Teller testified that he was at the same party that afternoon and described defendant's condition between 8 and 9:30 p.m. that evening in about the same manner as did Two-Rivers.

Merely being "drunk" or "intoxicated" is no defense, even though the condition may have lasted for several days. *People v. Hare*, 25 Ill. 2d 321; *People v. Winters*, 29 Ill. 2d 74.

The testimony shows that defendant, armed with a revolver, and an accomplice, armed with a knife, entered a Holiday Inn motel and forced the security guard at the door to the front desk. Two women were working at the desk. Defendant told them not to move or he would shoot. He jumped over the desk and asked where they kept the

money. One of the women opened the cash register, and defendant took the contents of the register and put them in his pockets. Defendant asked if that was all and the desk clerk said yes. He took money from the person of the desk clerk. He then told the security guard to open the vault, and the guard said that only the innkeeper could do that. A guest of the motel who saw the robbery taking place called the police, who arrived at about this time. When defendant saw the police, he said to his accomplice "let's go," and they ran out the door. The police pursued and caught them. The motel receipts were found in defendant's pockets, and the employees of the motel identified him.

The two women desk clerks, the security guard and two of the police who captured defendant testified at the trial. None of them mentioned that defendant appeared to be intoxicated at the time of the robbery at 10:15 p.m., and they were not asked about it on cross-examination. The evidence shows his purpose was to steal money from the motel. He was mentally alert enough to take a gun, subdue the security guard, ask for the money, order the vault opened, and flee when the police arrived. He was physically capable of jumping over the front desk, taking money from the cash register, running out the door and climbing onto a scaffold outside the motel where the police caught him.

We find insufficient evidence in this record from which the trier of fact could find that defendant's intent to steal money from the victims, or in their presence, with force and intimidation, while armed with a dangerous weapon, was negated. The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE DOOLEY, specially concurring:

I concur in the judgment of the court in affirming the conviction of defendant. As the majority's opinion points out, the evidence of defendant's conduct during and after the robbery showed an intent to commit armed robbery.

An awareness that what we do today dictates tomorrow's course of conduct in Illinois courts prompts this opinion. The extensive treatment of a subject, and the court's position that voluntary intoxication may constitute a defense, is certain to proliferate a new aspect in criminal litigation. The defendant, it will be urged, was too intoxicated to intend to permit the particular crime which, like the charge here, required no specific intent. Thus, the majority contends, "We find insufficient evidence in this record from which the trier of fact could find that defendant's intent to steal money from the victims, or in their presence, with force and intimidation, while armed with a dangerous weapon, was negated."

The duty of this court is to follow the mandates of the General Assembly in the absence of constitutional infirmity. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 306.) Here the task is a simple one. Section 18—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—1(a)) defines the offense of robbery in the following words:

> "A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

Armed robbery, in turn, is defined by section 18—2(a) (Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a)) as follows:

> "A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon."

Neither section incorporates any requirement that a specific intent to commit the robbery must be proved. The court's importation of such an element into the Code cannot be justified.

The Committee Comments to section 18—1 state:

"This section codifies the law in Illinois on robbery and retains the same penalty. No change is intended. *** *No intent element is stated as the taking by force or threat of force is the gist of the offense and no intent need be charged.* (See *People v. Emerling*, 341 Ill. 424, 173 N.E. 474 (1930).)" (Emphasis supplied.) Ill. Ann. Stat., ch. 38, par. 18—1, at 213 (Smith-Hurd 1970).

The court rejects this explanation by the committee on the ground that *Emerling* itself was incorrectly decided, contending it was based on a "misreading" of *People v. Hildebrand* (1923), 307 Ill. 544, which specifically holds no proof of intent is required. Parenthetically, I note the meaning of the 1961 Criminal Code can hardly be appropriately ascertained by analyzing two cases decided 30 or more years before its enactment.

The Illinois statutes in effect prior to the enactment of the present criminal code have, with an 1874 exception, always defined robbery in terms of the use of force or intimidation without regard to specific intent. See 1827 Ill. Laws 134, sec. 61; 1833 Ill. Laws 182, sec. 61; Ill. Rev. Stat. 1845, at 160, sec. 61; 1919 Ill. Laws 431, sec. 246.

The exception consists of language added to the robbery statute which appears in the revised statutes of 1874. As revised, the section read:

"Robbery is the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation. Every person guilty of robbery shall be imprisoned in the penitentiary not less than one year nor more than fourteen years; or if he is armed with a dangerous weapon, with intent, if resisted, to kill or maim such person, or being so armed, he wounds or strikes him, or if he has any confederate present so armed, to aid or abet him, he may be imprisoned for any term of years or for life." Ill. Rev. Stat. 1874, ch. 38, par. 246.

This statute was considered in *McKevitt v. People* (1904), 208 Ill. 460. McKevitt had been indicted for robbery, and the indictment further charged that at the time he was armed with a weapon. The jury found him

"guilty of robbery in manner and form as charged in the indictment." (208 Ill. 460, 471.) The question before the court was whether defendant was guilty of ordinary robbery or of robbery in its aggravated form. It was held that only a conviction for the lesser offense could be sustained, since there was no basis for assuming that the jury had found that defendant had the requisite intent to kill or maim the victim.

In 1919 the statute referred to was amended so as to delete the intent requirement. (1919 Ill. Laws 431.) The effect of the amendment was passed upon in *People v. Hildebrand* (1923), 307 Ill. 544, 555. There the indictment for robbery also charged that defendants were armed with a dangerous weapon. As in *McKevitt,* the jury found them "guilty of robbery in manner and form as charged in the indictment." (307 Ill. 544, 555.) The sentence imposed exceeded what the statute authorized for robbery committed when not armed with a dangerous weapon. Defendants then argued that because the jury had made no finding that they had in fact been armed with a dangerous weapon, the sentence could not stand under the rule announced in *McKevitt.* That contention was rejected, with the court stating:

"The statute under which the defendant in that case was convicted of robbery provided that if the person convicted was armed with a dangerous weapon, with intent, if resisted, to kill or maim the victim, he should be subject to the greater penalty. In 1919 this statute was amended so as to provide that if the defendant is armed with a dangerous weapon he shall be imprisoned in the penitentiary for any term of years not less than ten or for life. (Laws of 1919, p. 427.) *No question of intent is involved. It is not required to be charged or proved. The mere fact of committing a robbery while armed with a dangerous weapon incurs the liability to the higher punish-*

*ment."* (Emphasis supplied.) 307 Ill. 544, 555.

*People v. Emerling* (1930), 341 Ill. 424, also involved a conviction for robbery while armed with a dangerous weapon. The court had instructed the jury that, "to constitute the offense charged in this case, the intent alleged in the indictment is necessary to be shown, but that direct and positive testimony is not necessary to prove the intent; it may be inferred from the facts and circumstances shown by the evidence." 341 Ill. 424, 428.

This court rejected a claim that the giving of this instruction was reversible error, stating: "In the present case *no question of intent* is involved. It was not required to be charged or proved. (*People v. Hildebrand,* 307 Ill. 544.)" (Emphasis supplied.) 341 Ill. 424, 428-29.

There is nothing in *Hildebrand* or *Emerling* which can be construed as suggesting that in a case of robbery or armed robbery it must be proved that the defendant had the specific intent to commit the act.

Again, in *People v. Bartz* (1930), 342 Ill. 56, this court affirmed a defendant's robbery conviction and held the trial court properly refused an instruction to the effect that the defendant was not guilty of forming an intent, saying defendant could be convicted of a crime "which consists only of the doing of acts which are prohibited by law and in which intent is not an element" (342 Ill. 56, 67). To the same effect see *People v. Johnson* (1931), 343 Ill. 273, and *People v. Cassidy* (1946), 394 Ill. 245, *cert. denied* (1946), 329 U.S. 769, 91 L. Ed. 662, 67 S. Ct. 130. Multiple appellate court cases follow these authorities. See *People v. Bray* (1964), 52 Ill. App. 2d 384, *People v. Berlin* (1971), 132 Ill. App. 2d 697, *People v. Hawkins* (1973), 14 Ill. App. 3d 549, and *People v. Mask* (1975), 34 Ill. App. 3d 668, to list a few.

Thus, one may put aside such cases as *People v. McLaughlin* (1929), 337 Ill. 259, where the charge was that defendant assaulted the victim with the intent to rob him, and where the evidence of that intent was found

wanting.

The question before us cannot be resolved on whether the committee improperly cited *Emerling* as authority for the proposition that intent need not be charged or proved in a robbery case. The stark fact is that the committee which drafted the Criminal Code of 1961 did not introduce into sections 18—1 or 18—2 a specific intent requirement. In interpreting the Code the views of the drafters obviously deserve consideration. (See *People v. Touhy* (1964), 31 Ill. 2d 236, 239.) It should also be noted that *Hildebrand* was cited with approval in the later case of *People v. Johnson* (1931), 343 Ill. 273, 277, and *Emerling* was so cited in *People v. Cassidy* (1946), 394 Ill. 245, 246. In the former of these two cases, moreover, the court rejected a contention that voluntary intoxication could be a defense to a charge of robbery.

*People v. Ware* (1961), 23 Ill. 2d 59, also relied on by the majority, does not support its thesis. That case appears to have involved the inadvertent failure of a policeman to return property to a person from whom it had earlier been taken pursuant to an arrest. The construction given by the court to the word "felonious," used in the robbery statute then in effect, as connoting intent does not aid in construing the present Code provision, which is without that term.

Indeed, article 4 of the Code treats the question of intent in quite a different manner. Section 4—3 provides:

> "(a) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7." Ill. Rev. Stat. 1975, ch. 38, par. 4—3.

Section 4—4 defines intent, and succeeding sections define the other three mental states, knowledge, recklessness, and negligence—all of which can exist without intent. Taken as a whole these provisions show that a person

having any one of the four enumerated mental states may be guilty of an offense.

*Bartholomew v. People* (1882), 104 Ill. 601, is relied upon by the majority. There the defense was based upon a statutory provision making drunkenness a defense if it were caused "by the fraud, contrivance or force of some other person, for the purpose of causing the perpetration of an offense." (104 Ill. 601, 606.) The narrow ground of this defense seems irrelevant both to the facts of the present case, which do not involve involuntary intoxication, and to the language of section 6—3 of the present code (Ill. Rev. Stat. 1975, ch. 38, par. 6—3), which now deals with that subject.

*People v. Lion* (1957), 10 Ill. 2d 208, and *People v. Hare* (1962), 25 Ill. 2d 321, also mentioned by the court in this connection, deal with the offense of murder. The provisions of section 9—1 on this subject contain their own express references to the intent and knowledge of a defendant. These are not pertinent to whether the ingredient of intent is to be read into those sections of the Code dealing with robbery.

The court has effected a far-reaching and, in my view, an unwise change in the Criminal Code for reasons which cannot withstand analysis. In so doing it has opened up an entirely new defense in prosecutions for robbery and potentially for other offenses as well. The limiting effect on law enforcement seems obvious.

As one writer on the subject has pointed out, a major effect of intoxication is that it releases inhibitions, thus facilitating behavior which may violate the law. "Save in extreme cases, the intoxicated actor is still aware of his actions and his purposes to the extent sufficient for the imposition of criminal liability." (Paulsen, *Intoxication as a Defense to Crime,* 1961 U. Ill. L.F. 1, 4.) See also Remington and Helstad, *The Mental Element in Crime—A Legislative Problem*, 1952 Wis. L. Rev. 644, 669.

I would affirm the conviction on the basis of the

statutory definitions of robbery and armed robbery as applied to these facts. Specific intent is not an ingredient of either of these crimes as delineated by the General Assembly. A glance at the past, the prologue of the present, supports this position.